12563

HARVIE v. HEISE, SHERIFF, *ET AL.*, AND 8 OTHER CASES

(148 S. E., 66)

*Messrs. C. T. Graydon,* and *Jas. S. Verner,* for petitioners,

*Messrs. Jester & Wooten,* and *C. S. Bowen,* for petitioner A. W. Wilson,

*Messrs. Spears & Want,* for petitioner A. R. Kizer,

*Messrs. Dean, Cothran & Wyche,* for petitioner G. M. Adler,

*Messrs. R. Y. Kibler,* and *D. M. Winter,* for petitioner W. D. Kelly,

Messrs. *Hart & Moss*, for petitioners Keeney & Sons,

Mr. *L. G. Southard*, for petitioner B. W. Briggs.

*T. C. Turner* also for petitioners.

*Attorney General John M. Daniel*, and *Asst. Atty. Generals Cordie Page* and *J. Ivey Humphrey*, and *E. L. Herndon*, for respondents,

January 16, 1929.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

In these nine separate proceedings, instituted in the original jurisdiction of this Court, the petitioners seek writs of injunction to restrain and prohibit the respondents—and in some of the actions, all law enforcement officers, state, county, and municipal—from seizing and confiscating certain slot or vending machines. With some differences to be noted with respect to one of the machines involved in the *Keeney case*, these machines are all of the same make or practically alike in operation. As the several proceedings

present the same questions, the Court heard them together; and, while we shall give full consideration to the pleadings and arguments in all the cases, we shall consider more particularly the first-named action, the disposition of which will dispose of all the others as well.

The slot machine in question, which the petitioner is engaged in installing and operating, is a mint-vending machine, know as "Mills O. K. Front Mint-Vender," and is alleged by him to be a purely merchandise vending machine with an amusement feature designed merely to attract attention and to stimulate the sale of mints. This machine, one of which was exhibited to the Court, is operated in this way: The player deposits a nickel, or five-cent piece, in a slot at or near the top of the machine, pulls a lever at its right side, and turns a knob below, which releases a package of mints. This operation also causes several reels or cylinders on the front of the machine to spin around, thus furnishing the player, it is alleged, with amusement and entertainment by exhibiting different combinations of pictures of fruits, etc. In other machines the cylinders operate to show humorous remarks, and in still others to tell the pretended "fortune" of the customer. At irregular intervals the machine issues brass checks or tokens, from 2 to 20 in number, according to the luck of the player, which are delivered to him by the vender at the time he receives the package of mints. The petitioner alleges that these tokens have no monetary or trade value, and are not redeemable in money or otherwise, but are offered merely as a special inducement to sell the mints; that the player may operate the vender with these tokens for his own amusement, as above indicated, but when he does so he does not receive any mints or other thing of value, and that he is advised in advance of each operation by a card placed on the front of the machine exactly what he will receive as the result of each play. He alleges further that the machine in question is not such as is declared to be illegal by the laws of the State, and that, if petitioner's property is seized and confiscated, he will suffer irreparable injury thereby.

Upon the verified petition, in this particular case, Chief Justice R. C. Watts issued a temporary restraining order,

and ruled the respondents to show cause, at the time and place named in the order, why the injunction should not be made permanent; The respondents made return and answer to the petition, denying that the player or operator of the machine receives certain uniform and fair return in value for the coin deposited therein, and that there is no element of chance involved in the operation of the machine. They allege further that the brass checks which the player may receive, in addition to the package of mints, are not used solely for amusement of the player and for inducing the sale of mints, as alleged by the petitioner, but are redeemed in cash or merchandise by the custodian of the machine; that the machines are gambling devices under the statute, and that their threatened seizure is in pursuance of the criminal laws of the State, and that a Court of equity is without jurisdiction to restrain the enforcement of these laws. In support of their allegations of fact, the respondents filed a number of affidavits, to which we shall hereafter refer.

The several questions raised by the pleadings may be thus stated: (1) Is the vending machine described in the petition a gambling device, the keeping or operation of which is contrary to law? (2) May the respondents seize and take possession of the machine, even though it is a gambling device, the keeping or operation of which is illegal under the statute? (3) Has the Court the power to grant an injunction to prevent the seizure of these machines by the respondents?

The statute, Section 196, Vol. 2, Code 1922, under which it is contended the machines may be seized and confiscated, is as follows: "It shall be unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State, any slot machine of whatever name or kind, except automatic weighing, measuring, musical and vending machines which are so constructed as to give a certain uniform and fair return in value for each coin deposited therein, and in which there is no element of chance. Any person whomsoever who shall violate this Section shall be subject to a fine of not more than one hundred dollars, or imprisonment upon the public works of the Coun-

ty wherein the offense is committed for a period of not more than thirty days."

From a reading of this Section it is seen that, in order to escape the condemnation of the statute (1), the vending machine must give a certain uniform and fair return in value for each coin deposited therein, and (2) there must be no element of chance in the operation of the machine. The contention of the petitioner is that his machine meets fully both of these requirements, and is not, therefore, in contemplation of the statute, a gambling device.

. It is generally held that a slot machine which gives for a coin deposited therein merchandise of the value of the coin, and also returns at uncertain intervals, in varying amounts, money or trade checks, is a gambling instrument. *State v. May,* 188 N. C., 470, 125 S. E., 9; *Com. v. Gritten,* 180 Ky., 446, 202 S. W., 884. It is also generally held that, even if the machine indicates in advance exactly what it will dispense, it is none the less obnoxious to the law, for the reason that the player does not gamble upon the immediate returns for the coin deposited but on the chance that a profit will be shown on the next play. *Brockett v. State,* 33 Ga. App., 57, 125 S. E., 513; *Tonahill v. Molony,* 156 La., 753, 101 So., 130; *State v. Googin,* 117 Me., 102, 102 A., 970; *Zaft v. Milton,* 96 N. J. Eq., 576, 126 A., 29; *Griste v. Burch,* 112 S. C., 369, 99 S. E., 703.

In 27 C. J., 989, we find the following: "The various Courts have formulated different rules for determining when a slot machine is a gambling device, but one which seems to have been accepted very generally is that, where one who plays a slot machine stands to win or lose money, trade, or checks, by hazard or chance, the machine is a gambling device. The machine is a gambling device where its operation is such that, although the player in any event will receive something, he stands a chance to win something in addition. Some Courts hold that a slot machine is not a gambling device where the element of chance is wholly absent, as where the machine indicates with absolute certainty, before the

player deposits his coin or check, what he will receive; but other Courts hold the contrary on the theory that the machine holds out an inducement to play in the expectation that by the play the machine will be set to indicate a larger reward the following play."

In 12 R. C. L., 729, it is said: "There are so many kinds of slot machines, differing so much in construction and operation and used for such varied purposes, that it is difficult to lay down any general rule fixing their status with reference to the question of gaming or gambling. A slot machine, it has been said, is not *per se* a gambling device, since it may be used or played upon for innocent purposes, and the Courts cannot therefore take judicial notice that every slot machine is a gambling device, as the use to which it is put must determine its character. In general, however, any slot machine, regardless of its description and although it is a mere automaton which keeps and runs itself, will be deemed to be an unlawful gambling device, where the one who plays the machine stands to win or lose money, trade checks, or prizes, by a chance, or more broadly, where there is an element of chance in its operation. And where the return to the player is dependent on an element of chance the generally prevailing opinion seems to be that a slot macine is a gambling device even though the player is assured of his money's worth of some commodity, and hence cannot lose."

In the *Griste case, supra,* this Court construed and applied our slot machine statute. In that case, however, it was made to appear that the trade checks were of some value, as they were redeemable in merchandise at the place of business of the custodian of the machine; and the Court held that, as the checks were released at irregular intervals and in uncertain numbers, the machine was not so constructed as to give a certain and uniform return in value for each coin deposited therein, and hence was clearly a gambling instrument.

After that decision the owners of slot machines, operated as indicated in that case, apparently set about to make such changes in the playing of the machines as would take them

out of the condemnation of the statute. Hence, we are told that the checks released by the machines, as now operated, have no trade or money value, and are intended only to be used in the operation of the machine by the player for his own amusement and entertainment; that while these checks do not induce customers to play the machine by appealing to the gambling instinct, they do stimulate and induce trade by furnishing amusement and entertainment, which is of no value.

While this contention may appear plausible upon its face, it is not convincing. The mints which are released may be bought over the counter at the same price paid through the machine, and it is admitted that they are not the inducing motive for the play; it is also said by the petitioner that the brass checks have no value at all. There remains, then, as an inducement for playing the machine, only the alleged amusement derived therefrom. We cannot bring ourselves to believe that this alleged amusement would induce customers to play the machines to such an extent as would bring the big returns, through stimulation of trade, claimed by those putting them on the market. It is contrary to reason that players would continue to idle away their time and waste their money operating the machine merely for the so-called amusement; if the playing is for the purpose of seeing the pictures or reading the humorous remarks, or of having a pretended "fortune" told, it must be admitted that such entertainment —which is of the most elementary type—must necessarily soon grow monotonous and fail of its purpose. It is almost inconceivable that persons of any intelligence could be induced to spend money for something they do not want through the prospect of getting something of no value. Such contention does violence to every conception of reason, and is contrary to man's natural inclination.

But the respondents insist that the brass checks have a trade value and are redeemable in merchandise at the place where the machine is located, and have filed affidavits in support of this proposition. The affidavit of W. J. Mangum

is to the effect that he played the machines in question at no less than 13 different places in the City of Columbia on September 24 and 25, 1928, and that at all of these places the brass checks or tokens given out by the machines, while stamped on one side "good for amusement only" and on the other side "no cash value," were redeemed in merchandise of various kinds at the places where the machines were located. Other affidavits, of both adults and minors, filed in some of these proceedings, are to the same effect, namely, that the brass checks released are redeemed in merchandise at the place of the custodian of the machine—all of which tends to show that the redeeming of the checks is a well-understood part of the general scheme of operation of the machine. It is significant that no affidavit was filed denying the truth of these statements.

In the light of these considerations, we think that the printing of the notices upon the brass checks, that they are of "no value" and are intended solely for the amusement of the customer, is a mere subterfuge, never intended to be and not in fact acted upon, but intended only to apparently satisfy the letter of the law, while violating its spirit.

"In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of devices to comply with the letter but to do violence to the spirit and thwart the beneficent objects and purposes of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the Courts to accomplish no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded, diversified and cunning mechanical inventions." *Moberly v. Deskin,* 169 Mo. App., 672, 155 S. W., 842.

In addition to what has been said, even if it should be conceded that it is the sincere purpose of the owner, that the checks be played only for the amusement of

the operator, we cannot say that they have no value whatever; for it must be that the amusement or entertainment furnished the player is worth something to him if it constitutes the inducement for him to operate the machine. It is idle to argue that he would spend his money and time in operating the machine for the purpose of obtaining something that is of no value to him—unless we impute to him the lack of that common sense which he is presumed to have. Further, especially in view of the high cost of amusement or entertainment and the immense sums paid for it by people of all classes, it is reasonable to suppose that the owners of the machines, if they expect the amusement or entertainment furnished to operate as an inducement to play, must consider it of some value to the operator. In addition, it is apparent that some cost or expense is necessarily incurred in the manufacture and distribution of these checks or tokens, and the simple assertion that they are of "no value" does not establish that fact. Even the contention that the checks are not the property of the player, but loaned him for the purpose of playing the machine only, does not help the cause of the petitioner. He finds himself in the same predicament, namely, that he is lending to the operator something of no value to him, which comes into his possession temporarily as an inducement to play for something that he does not want.

Viewing the question from all possible angles, we are satisfied that the checks or tokens have some monetary or trade value, and, in view of the fact that they are released by the machine at irregular intervals and in uncertain numbers, the element of chance is always present, and there is no certain and uniform return in value for the coin deposited in the machine. In these respects, the operation or possession of the machine clearly violates the statute in question.

The operation of the small machine referred to in the *Keeney case,* which dispenses "ball chewing gum," does not appear, from the facts stated, to be in violation of the statute. It appears that this machine is operated by depositing in the opening at the top of the machine a one-

cent coin and by pressing down a pedal and a knob, which causes the machine to deliver a ball of chewing gum. The machine releases nothing except chewing gum, no check or taken being dispensed by it. It would appear from this state of facts that this machine is not a gambling device, as a fair and uniform return in value is made to the purchaser for the coin deposited on each play, with no element of chance in the operation of the machine. It is assumed that law enforcement officers will not bring prosecution except upon reasonable inferences that the law invoked has been violated.

Discussion of the second question is unnecessary. Under the authority of the *Griste case,* it must be answered in the affirmative.

It is not claimed that the statute in question is void; the claim is that it is not applicable for the reason that none of its provisions are violated by the operation of the slot machines in question. The holding of this Court being to the contrary, equity will not interpose to enjoin the enforcement of a valid criminal law, or of prosecution under such law. *Cain v. Daly,* 74 S. C., 480, 55 S. E., 110; *Charleston Oil Co. v. Poulnot, Sheriff,* 143 S. C., 283, 141 S. E., 454; *Golf Club v. Robinson, Sheriff,* 143 S. C., 347, 141 S. E., 610.

The judgment of this Court, therefore, is that, in each of the said cases, the temporary restraining order be dissolved, the permanent injunction denied, and the petition dismissed.

And it is so ordered.

MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : I think that until it has been adjudicated, as it has not, that the checks issued by the machine are redeemable in cash or trade, the machines in question do not offend the particular statute involved. The fact that they may appeal to the gambling instinct, and are operated by customers as a gambling instrument, does not bring them within the statute, which might for that reason be applied to hundreds of other games and appliances. If the local proprietor should install such machines and permit in

his establishment the operation of them in satisfaction of the gambling instinct, he would be liable under a different statute for maintaining a gambling nuisance; this does not present such a case, so far as the manufacturers and owners of the machines are concerned.

MR. CHIEF JUSTICE WATTS concurs.