E. J. MACKAY v. STATE.

No. A-9356. Oct. 21, 1938.
(83 P. 2d 611.)

150

 

Jean P. Day and Robert Burns, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen and Sam H. Lattimore, Asst. Attys. Gen., and Jess I. Miracle, Co. Atty., of Okemah, for the State.

BAREFOOT, J. The defendant was charged in the county court of Okfuskee county with the unlawful operation of a slot machine; was tried, convicted, and was by the court sentenced to pay a fine of $25 and costs, and has appealed.

This appeal is brought to this court for the purpose of determining whether or not the setting up and operating of an "Esco Novelty Candy Vending Machine, No. 382", is a violation of the slot machine statute of this state. The statute in question, Oklahoma Statutes, 1931, section 2193, Okla. St. Ann., tit. 21, § 944, is as follows:

"Any person who sets up, operates or conducts, or who permits to be set up, operated or conducted in or about his place of business, whether as owner, employee or agent, any slot machine for the purpose of having or allowing the same to be played by others for money, property, checks, credits or any representative of value shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than $25 nor more than $100; or by imprisonment in the county jail for a term of not more than 30 days, or by both such fine and imprisonment."

It is admitted by the parties that the machine was set up and operated by defendant. It is the contention of defendant:

"That the vending machine used here does not come within any of the machines or devices, or the operation thereof, as described by the foregoing Oklahoma statute, and that his machine is not a slot machine at all, but a coin vending machine for merchandise, so arranged in its mechanism and operation, that the operator receives merchandise which is equal or greater than the coin deposited in the machine, and in addition thereto, may by the exercise of skill, experience and judgment, secure for himself one of the prizes placed upon the revolving turntable within the glass covered compartment."

The evidence in this case reveals that the machine in question was about the same size and character of the ordinary slot machine. It was operated by a player placing a nickel in the slot and it drops down and makes contact with the motor which starts the turntable. On this turntable are located different articles of the value from 5 to 49 cents, as shown by the evidence. A crane is located just above the turntable, and attached to it are tongs, which are handled by an instrument on the front of the board, known as the "locator." When the nickel is deposited and the table begins to revolve the crane carries the tongs above the prizes, and by the pressing of the "locator", the player is supposed to grab with the tongs the prize which he desires. This is executed by his shoving the "locator" at the exact time that it is over the prize he desires.

The defendant explained its operation as follows:

"Q. Say you wanted to get some definite object, how would you operate the machine? A. I would locate the object, its distance from the outside rim, or inner rim, of the rotating table and adjust it so it would be underneath the crane and as the crane lowered, if I saw it was not coming down exactly, I could still move it over even after the crane meets the object, the crane can be jiggled

and the hook will move one way or another and you have a lot of time, not a second, but plenty of time to move it. I have plenty of time after it hits the object to move the hook and make it fall over instead of closing if I am expert enough, maybe not every time depending upon my dexterity. Q. That would include your sense of distance and sense of location? A. Co-ordination between my mind and hand, that is the difficult part, what we term synchronization of mind and hand."

On each play the person operating the machine received from a container located on the front a certain amount of candy, known as "red hots," and as revealed by the evidence of the value of one and one-half cents. The evidence of several parties who had played the machine at defendant's place of business was offered by the state. They testified they had played the machine, some four times and had secured two prizes, some six times and had secured two prizes, some five times and secured one prize. They also testified they were playing the machine for prizes, and that often the candy was not taken. There was an effort on the part of defendant to show that by an absolute accurate handling of the "locator" one would be able to secure the prize desired at each turn of the wheel. The evidence of the state does not bear this out. The evidence showed the tongs could only be moved forward and not to the side when they had stopped. If no prize was won the player only received the "red hots", which were of the value of one and one-half cents, for his five cent investment.

The question of the operation of a slot machine or of coin vending machines for the sale of merchandise has been before the Supreme Court and this court upon four different occasions; but has been before the courts of this country many times. The decisions have not always been in harmony, but many uniform principles of law have been laid down by the courts which apply with force and logic to the operation of these different kinds of machines, and as to their being a violation of the statute above quoted,

and coming within the terms of a gambling device. It is almost universally·held that if there is an element of chance in the operation of the machine, it then comes within the inhibition of the statute. One of the strongest attributes entering into this element of chance is whether the player secures the full value of the money invested on each play. In the case at bar it will be noted that the evidence established that when a prize was not won the player only received goods of the value of one and one-half cents, for each five cents invested, which would bring it squarely within the rule above announced.

The first case to come before this court was in State v. Johnson, 15 Okla. Cr. 460, 177 P. 926. In this case defendant was charged with the violation of the above statute by the operation of a slot machine. The evidence established that each time the machine was played the operator would secure a package of chewing gum, and at different times would receive from two to 20 checks which could be used for the purpose of purchasing merchandise at the place of business where the machine was being operated. The checks could also be used to operate the machine in the place of nickels. The lower court sustained a demurrer to the evidence of the state for the reason that "the testimony is insufficient to make out an offense under the law." This court overruled the lower court, saying:

"By enacting the statute against slot machines, the Legislature intended to prohibit the setting up, operating, or conducting of any kind of a slot machine for the purpose of having or allowing same to be played by others for money, property, checks, credits, or any other representative of value. It was intended to prohibit the placing of such a machine in any place of business as an invitation to the public to play same for money or other property; to invite the public generally to take a chance of getting something for nothing."

The statute was next construed in the case of Nelson v. State, 37 Okla. Cr. 90, 256 P. 939. This machine was

operated by placing a coin therein, operating a lever, and the player would receive one package of mints, and in some instances, would receive trade checks, each of the value of five cents in merchandise. These checks could be played in the machine for other checks, which, however, was against the rule of defendant. The court said:

"The delivery of these checks not being uniform constitutes a chance or hazard under which the person playing the machine might receive value greatly in excess of the coin deposited. This makes the machine a gambling device. * * * It is equally gambling if he may win by chance more than the value expended by him."

The Supreme Court of this state had under consideration this statute in the case of Colbert v. Superior Confection Co., 154 Okla. 28, 6 P. 2d 791. In this case the lower court enjoined the officers of Carter county from interfering with defendant in the operation of slot machines. The evidence established that the machine paid in checks. That the checks could only be played in the machine for amusement, and could not be cashed. The court, after quoting from Nelson v. State, supra, reversed the decision of the lower court, holding:

"That is what the record in this case shows; that is, that the player was induced to believe that, if he played the machine with nickels long enough, he would finally get some checks which he could use for the purpose of playing the machine for amusement, and the amount of checks to be received is dependent upon conditions over which he has no control. If the act in question applied only to things of value, we think that the amusement held out as an inducement is a thing of value sufficient to bring these machines within the plain provisions of the act. We are of the opinion that the act is applicable without regard to the value of the things held out as an inducement to the playing of the machine."

This court, in the case of Overby v. Oklahoma City, 46 Okla. Cr. 42, 287 P. 796, had under consideration the construction of an ordinance passed by the city council of

Oklahoma City, making it unlawful to operate or be in control of a slot machine, and declaring the same to be a public nuisance. This case is the main one relied upon by defendant for a reversal of this case. In the first place this case does not involve a violation of the state statute above quoted, but an ordinance passed by the city council of Oklahoma City. It was tried upon an agreed statement of facts. The facts agreed upon and the facts in the case at bar are in many respects quite different, and a clear distinction can be made between the two cases. In that case the court was considering a candy vending machine. Under the agreed statement of facts a nickel was deposited in the machine, a lever was pulled which turned a knob which released into a tray at the bottom of the machine a standard five cent package of mints (which are candied confections). At the same time, and by the same operation, three reels on the front of said machine are caused to spin, causing a flash of color, which are designed to attract the attention of others, and for the amusement of the players, and there is also displayed amusing sentences depicting his or her character, prospects of marriage, and other readings concerning his or her future. In addition, at certain intervals, there is dropped into a receptacle at the bottom of the machine metal slugs, or tokens, varying in number from two to 20. It is agreed that these have no monetary value, and cannot be exchanged for merchandise or other things of value. They may be replaced in the machine and played for the purpose of seeing the amusing sentences above referred to. When so used no mints or candy is secured. It will thus be seen that the facts in this case and the case at bar are quite different. In the instant case the player of the machine only secures one and one-half cents worth of "red hots", and nothing else if he does not secure a prize. The sole inducement is a chance to secure the prize, which is of more value than the amount invested. The court says:

"The ordinance which the defendant is alleged to have violated requires that a slot machine must be a gambling device before it can be declared a public nuisance. We hold that a mere vending machine by which merchandise is dispensed in a uniform quantity to each purchaser, although the price may be deposited in a slot in such machine, is not what is meant; the use of a vending machine is not unlawful where such machine cannot be played for money, property, checks, credits, or any representative of value as the terms are used in the ordinance."

From this statement it will be noted that it was the intention of the court to hold lawful only a vending machine by which merchandise is dispensed, where the operator secures only the merchandise, and of the exact value of the amount invested; and where no element of chance is permitted. In other words, it was the intention of the court in this case to hold that the sale of popcorn, peanuts, cigarettes and other merchandise was not unlawful by reason of the fact that it was sold by the operation of a vending machine and full value was given, and there was no element of chance, and no effort to secure something of greater value than the amount invested.

As will be noted from the cases hereafter cited, many of them hold that the machines which offer amusement features as in this case are operated for value and come within the classification of gambling devices. This is especially true where metal slugs or checks are secured at intervals and deposited in the machine to secure the amusement features. Harvie v. Heise, 150 S.C. 277, 148 S.E. 66; Id., 279 U.S. 822, 49 S. Ct. 351, 73 L. Ed. 976; State ex rel. Manchester v. Marvin, 211 Iowa, 462, 233 N. W. 486; Painter v. State, 163 Tenn. 627, 45 S.W. 2d 46, 81 A.L.R. 173; Colbert v. Superior Confection Co., 154 Okla. 28, 6 P. 2d 791.

In the case of Harvie v. Heise, supra, it is said [page 69]:

"In addition to what has been said, even if it should be conceded that it is the sincere purpose of the owner, that the checks be played only for the amusement of the operator, we cannot say that they have no value whatever; for it must be that the amusement or entertainment furnished the player is worth something to him if it constitutes the inducement for him to operate the machine. It is idle to argue that he would spend his money and time in operating the machine for the purpose of obtaining something that is of no value to him—unless we impute to him the lack of that common sense which he is presumed to have. Further, especially in view of the high cost of amusement or entertainment and the immense sums paid for it by people of all classes, it is reasonable to suppose that the owners of the machine, if they expect the amusement or entertainment furnished to operate as an inducement to play, must consider it of some value to the operator. In addition, it is apparent that some cost or expense is necessarily incurred in the manufacture and distribution of these checks or tokens, and the simple assertion that they are of 'no value' does not establish that fact. Even the contention that the checks are not the property of the player, but loaned him for the purpose of playing the machine only, does not help the cause of the petitioner. He finds himself in the same predicament, namely, that he is lending to the operator something of no value to him, which comes into his possession temporarily as an inducement to play for something that he does not want.

"Viewing the question from all possible angles, we are satisfied that the checks or tokens have some monetary or trade value, and, in view of the fact that they are released by the machine at irregular intervals and in uncertain numbers, the element of chance is always present, and there is no certain and uniform return in value for the coin deposited in the machine. In these respects, the operation or possession of the machine clearly violates the statute in question."

In the case of Painter v. State, supra, it is said [page 47]:

"The use of machines of the character here involved in the sale of merchandise is a direct effort to arouse and exploit this instinct to gamble, for the profit of local mer-

chants and the nonresident manufacturer. If otherwise, why make the number of checks to be received dependent upon chance? It can have no wholesome effect upon legitimate business, since its tendency is to substitute the lure of an additional uncertain consideration for quality of the merchandise sold as the purchasing inducement. It is sought to clothe the practice of gaming for trifles with the livery of legitimate business and thus cause it to appear respectable. The merchandise is a confection, particularly attractive to youth, and the amusement which may be won by the purchaser is the playing of a game which appeals most strongly to youth. This combination has convinced us of the insidious evil of the display and use of the machine, as a violation of the quoted statute. The case involves not merely the small fine imposed upon the plaintiff in error, but the character of the device employed, and that this character is noxious we have no doubt. The issue is not controlled by the fact that the stakes to be played for are trifling. The fundamental and underlying principle of the offer made by the device to the customer is one of chance and hazard, and fails within the letter and spirit of the statute."

In the case of Ex parte Fuller, 31 Okla. Cr. 289, 238 P. 512, the court had under consideration the question of the constitutionality of chapter 162, Session Laws of 1925, 68 Okla. St. Ann. § 21 note, which had reference to the taxation of slot machines, and no issue was decided therein which had reference to the question involved in this case.

As heretofore stated the question of whether the operation of slot machines comes within the inhibition of the statutes defining gambling devices has been before the courts of many states. We do not desire to unduly lengthen the opinion in this case by quoting extensively from these cases. The general rule adopted from all the courts is stated in 27 C.J. 989, as follows:

"The various courts have formulated different rules for determining when a slot machine is a gambling device, but one which seems to have been accepted very generally is that, where one who plays a slot machine stands to win

or lose money, trade, or checks, by hazard or chance, the machine is a gambling device. The machine is a gambling device where its operation is such that, although the player in any event will receive something, he stands a chance to win something in addition. Some courts hold that a slot machine is not a gambling device where the element of chance is wholly absent, as where the machine indicates with absolute certainty, before the player deposits his coin or check, what he will receive; but other courts hold the contrary on the theory that the machine holds out an inducement to play in the expectation that by the play the machine will be set to indicate a larger reward the following play." See, also, 12 R.C.L. 729.

We have examined many cases construing statutes of similar import to the one involved in this case. Some of these cases are as follows: City of Moberly v. Deskin, 169 Mo. App. 672, 155 S.W. 842; Harvie v. Heise, 150 S.C. 277, 148 S.E. 66; Id., 279 U.S. 822, 49 S. Ct. 351, 73 L. Ed. 976; State ex rel. Manchester v. Marvin, 211 Iowa, 462, 233 N.W. 486; Painter v. State, 163 Tenn. 627, 45 S.W. 2d 46, 81 A.L.R. 173; Jenner v. State, 173 Ga. 86, 159 S.E. 564; Rankin v. Mills Novelty Co., 182 Ark. 561, 32 S.W. 2d 161; Howell v. State, 184 Ark. 109, 40 S.W. 2d 782; Snyder v. Alliance, 41 Ohio App. 48, 179 N.E. 426; Gardner v. Daugherty, D.C., 10 F. 2d 373; Commonwealth v. McClintock, 257 Mass. 431, 154 N.E. 264; State v. Apodaca, 32 N.M. 80, 251 P. 389; Commonwealth v. Bowman, 267 Ky. 602, 102 S.W. 2d 382; State v. Ellis, 200 Iowa, 1228, 206 N.W. 105; State v. Paul, 46 R.I. 347, 128 A. 12, 38 A.L.R. 71; City of Milwaukee v. Johnson, 192 Wis. 585, 213 N.W 335; People v. Kopper, 253 N.Y. 83, 170 N.E. 501; People v. Spitzig, 133 Misc. 508, 233 N.Y.S. 228; State v. Krauss, 114 Ohio St. 342, 151 N.E. 183; Ross v. Goodwin, D.C., 40 F. 2d 535; Green v. Hart, D.C. 41 F. 2d 854; 38 A.L.R. 73, note; 81 A.L.R. 177, note.

A reading of these opinions will convince one that the machine involved in the case at bar clearly comes within the inhibition of the statute of this state. It has every

element of chance; the amount received by the operator when no prize is received is far less than the amount of the investment. The controlling inducement for the playing of the machine is the securing of the prize offered. The amount of candy received is no inducement, and is not often taken by the player. The argument that the proper conduct of the machine depends upon the skill and adaptness of the player is not borne out by the testimony. The witnesses testify that you cannot always win even though you possess skill and ability. If this could be done as suggested by defendant, there would then be no profit but a loss in the operation of the vending machine, and it is hardly probable that the owners would desire to operate the machines if they were operated at a loss. We quote from some of the above cited cases because the logic and reason used therein is so applicable to the case at bar.

In the case of Harvie v. Heise, supra, it is said:

"We cannot bring ourselves to believe that this alleged amusement would induce customers to play the machines to such an extent as would bring the big returns, through stimulation of trade, claimed by those putting them on the market. It is contrary to reason that players would continue to idle away their time and waste their money operating the machine merely for the so-called amusement; if the playing is for the purpose of seeing the pictures or reading the humorous remarks, or of having a pretended 'fortune' told, it must be admitted that such entertainment —which is of the most elementary type—must necessarily soon grow monotonous and fail of its purpose. It is almost inconceivable that persons of any intelligence could be induced to spend money for something they do not want through the prospect of getting something of no value. Such contention does violence to every conception of reason, and is contrary to man's natural inclination."

In City of Moberly v. Deskin, supra, it is said [page 844]:

"In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of

devices to comply with the letter, but to do violence to the spirit and thwart the beneficent objects and purposes, of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded, diversified, and cunning mechanical inventions. The chief element of gambling is the chance or uncertainty of the hazard. It is not essential that one of the parties to the wager stands to lose. The chance taken by the player may be in winning at all on the throw, or in the amount to be won or lost, and the transaction should be denounced as gaming whenever the player hazards his money on the chance that he may receive in return money or property of greater value than that he hazards. If he is offered the uncertain chance of getting something for nothing, the offer is a wager, since the operator offers to bet that the player will lose and in accepting the chance the player bets that he will win. Such offer, therefore, is a direct appeal to the gambling instinct, which, it is said, possesses every man in some degree, and it is the temptation to gratify the instinct that all penal laws aimed at gambling are designed to suppress."

In Commonwealth v. McClintock, supra, 154 N.E. 265, it is said:

"The chance was in the prospect of gaining this prize. This was the incentive which attracted the player. The chance of gain from the second operation was the inducement. It was an appeal to the gambling desire, a temptation to take the chance of gaining a substantial prize by continuing to operate the machine. The machine was a gambling device. It was, in fact, a scheme for the distribution of prizes by chance, the price being paid for a chance of a prize."

The record in this case reveals that defendant was a resident of Okfuskee county. That he had never violated the law in any way. That it was his purpose to take over the operating of these vending machines only if it was lawful. That he arranged with the officers to be present at

the time of operating the machines, so he could be arrested and a test case made thereon before he commenced the operation of same. We deem that this statement should be made in justice to him.

Finding no error in the record, we are of the opinion that the judgment of the county court of Okfuskee county should be affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.