STATE v. PAUL ABBOTT, CAPITAL AMUSEMENT COMPANY, AND H. E. LAING.

(Filed 20 November, 1940.)

**1. Criminal Law § 78b—**

Where defendant enters a plea of guilty and appeals from the judgment rendered, the appeal presents the single question of whether the facts alleged in the indictment and admitted by the plea are sufficient to constitute a criminal offense. In the present case, defendant having waived bill of indictment, the question of the sufficiency of the indictment is not necessarily presented, but it is held to properly charge a criminal offense under our statutes.

**2. Indictment § 9: Gaming § 3—Indictment for statutory offense which follows the language of the statute is sufficient and it need not negative exceptions.**

An indictment charging the ownership and distribution of slot machines adapted for use in such a way that as a result of the insertion of a coin the machine may be operated in such a manner that the user may secure additional chances or rights to use such machine and upon which the user has a chance to make various scores upon the outcome of which wagers may be made, follows the language of the statute and is sufficient to charge the offense therein defined. Chapter 196, Public Laws of 1937, Michie's Code, 4437 (t).

**3. Gaming § 1—Revenue Act of 1939 held not to repeal Flanagan Act prohibiting gaming slot machines.**

The provisions of the Flanagan Act, chapter 196, Public Laws of 1937, Michie's Code, 4437 (t), proscribing the possession and distribution of a coin slot machine in the operation of which the user may secure additional chances or rights to use the machine, is not repealed by the Revenue Act of 1939, Public Laws of 1939, chapter 158, section 130, since subsection 5 of the Revenue Act expressly negatives the intention to license or legalize any gaming slot machine or device, and since subsection 1 of the Revenue Act excludes from its licensing provisions slot machines which "automatically vend" any prize, coupon or reward which may be used in the further operation of such machine, the word "vend" being equivalent to the word "give" and the intent being to exclude from the licensing provisions a machine which provides a player with additional plays or games as a premium, prize, or reward irrespective of whether physical tokens of such premium, prize or reward, are, or are not, delivered to the player.

**4. Same—**

The mere fact of payment of State and county license on a slot machine does not render the possession or distribution of such machine legal when it is a machine proscribed and made illegal by valid statute.

**5. Statutes § 5a—**

A statute will be construed to effectuate the intent of the Legislature.

**6. Gaming § 1: Constitutional Law § 7—**

The Flanagan Act, prohibiting the possession or distribution of gaming slot machines, chapter 196, Public Laws of 1937, is a valid and constitutional exercise of the police power of the State.

STACY, C. J., concurring in result on the ground that the sufficiency of the indictment is not presented for review, defendant having waived bill and pleaded guilty to possession and distribution of slot machines prohibited by law.

BARNHILL and WINBORNE, JJ., join in concurring opinion.

APPEAL by defendant H. E. Laing from *Parker, J.,* at September Criminal Term, 1940, of WAKE. Affirmed.

This was a criminal action tried before Honorable R. Hunt Parker, Judge presiding at the September Criminal Term, 1940, for Wake County, for the Seventh Judicial District of the State of North Carolina, said case being tried upon the following bill of indictment:

"State of North Carolina—Superior Court,
  Wake County—July Term, A.D. 1940.

"The Jurors for the State upon their oath present: That Paul Abbott, 327 S. Bloodworth St., and Capital Amusement Company and H. E. Laing, late of the County of Wake, on the 8th day of May, in the year of our Lord, one thousand nine hundred and forty, with force and arms, at and in the County aforesaid, *unlawfully and willfully did own, store, keep, possess, rent, let on shares, maintain, and keep in his and/or its possession for the purpose of operation in a certain building, owned, leased, and occupied* by him under his management and control a certain slot machine and device, to wit: A certain machine, apparatus and device adapted or readily converted into: *One that was adapted for use in such a way that as a result of the insertion of a piece of money or coin or other object the machine was caused to operate or might be operated in such manner that the user was entitled to secure or might secure additional chances or rights to use such a machine, apparatus or device and upon which the operator or user had a chance to make various scores or tallies upon the outcome of which wagers might be made.*

"And the Jurors for the State, upon their oath aforesaid, do further present, that the said Paul Abbott, 327 S. Bloodworth St., and Capital Amusement Company and H. E. Laing, late of the County of Wake, on the 8th day of May, 1940, did unlawfully and willfully own, keep and possess a certain slot machine and device upon which the taxes levied by the State of North Carolina, County of Wake, had not been paid and upon which the licenses was not prominently displayed, as required by law, against the form of the statute in such case made and provided and against the peace and dignity of the State.     W. Y. Bickett, Solicitor.

No. 2771—State v. Abbott, 327 S. Bloodworth Street and Capital Amusement Co.—Indictment Various cases. Pros. Witnesses: Officer Clarkson, x Officer Maddrey. Those marked x sworn by the undersigned Foreman, and examined before the Grand Jury, and this bill found a True Bill. R. C. deRossett, Foreman Grand Jury."

The aforesaid bill of indictment was put in an envelope by the clerk of the Superior Court of Wake County, marked in words and figures as follows, to wit: "No. 2771—Criminal Docket. July Term, 1940. State v. Paul Abbott, Capital Amusement Co., H. E. Laing. Presentment— State's Witnesses: W. H. Clarkson, W. G. Maddrey."

And the said clerk entered this case upon the official dockets prepared by him for the presiding judge, solicitor and himself, as follows: "No. 2771—Criminal Docket, July Term, 1940. Offense: Illegal possession of Gambling Device. Officer Clarkson, W. G. Maddrey. State v. Paul Abbott, Capital Amusement Company, H. E. Laing."

In this case Paul Abbott and H. E. Laing, defendants, were called for trial by the solicitor and both defendants, the said Paul Abbott and H. E. Laing, in pursuance of the terms of their bonds, appeared in open court, the said H. E. Laing being represented by A. A. Aronson, Esq., of the Wake County Bar, and the said H. E. Laing, through and with the consent of his said counsel, the said A. A. Aronson, Esq., entered a plea of guilty in open court to the first count contained in the bill of indictment, charging him with unlawful possession and distribution of slot machines prohibited by law and the said H. E. Laing, through and with the consent of his counsel, A. A. Aronson, waived bill and all irregularities thereto and therein and entered said plea as upon bill found and admitted that the name Capital Amusement Company was his trade name used by him in the slot machine business and that he was engaged in the said slot machine business under the name of "H. E. Laing, trading as Capital Amusement Company," and at no time during said term of court did said H. E. Laing or his counsel object or except to said bill of indictment. A plea of guilty against the defendant H. E. Laing on the first count in the said bill of indictment was accepted by the solicitor for the State. The court heard evidence and thereupon entered the following judgment, to wit:

"Judgment—No. 2771. State v. Paul Abbott, Capital Amusement Company, H. E. Laing. Indictment—Illegal Possession of Gambling Devices, to wit: Slot Machines. The defendant, Paul Abbott, pleaded guilty to the first count in the bill of indictment charging him with the illegal and unlawful possession of slot machines, prohibited by law. The defendant, H. E. Laing, pleaded guilty to the first count in the bill of indictment charging him with the unlawful possession and distribution of slot machines prohibited by law. Prayer for judgment continued

for two years as to Paul Abbott upon payment of costs and upon the specific condition that during the next two years the defendant, Paul Abbott, does not have in his possession nor shall in any way be connected with any slot or vending machine nor any other type of machine that violates the 1937 Flanagan Act. If at any time during the next two years the defendant cannot satisfy the presiding judge of this court that he has not violated the conditions upon which prayer for judgment is continued *capias* will issue at term and the presiding judge shall take such steps as he deems proper according to law. It appearing to the court that the defendant, H. E. Laing, at this term of court has pleaded guilty to the first count in the bill of indictment in 24 cases charging him with the illegal possession, ownership, and distribution of slot machines prohibited by law and it further appearing to the court that ten years ago he paid the cost for violation of the slot machine law in the Recorder's Court of New Hanover County and he has been in the slot machine business off and on for five years or more, the judgment of the court is: That the defendant, H. E. Laing, be confined to the common jail of Wake County for a term of 8 months to be assigned to work the public roads under the direction of the State Highway and Public Works Commission. It is ordered by the court that the sentence in 2771 run concurrently with the road sentence in case 2749.

"To the judgment and sentence, the defendant H. E. Laing excepted, assigned error and appealed to the Supreme Court. Further notice waived. Defendant given statutory time in which to file case on appeal. State given statutory time to file exception or countercase. Appeal bond set at $100.00. Appearance bond set at $3,000.00.

"Counsel for the defendant and the Solicitor for the State having disagreed as to the Statement of case on appeal, the court, after notice to counsel for defendant and the Solicitor and in their presence in the Courtroom at Raleigh, N. C., settled the above as the case on appeal in this action, and the above constitutes the statement of case on appeal in this action. This October 11, 1940. R. Hunt Parker, Judge Superior Court, Presiding."

Defendant excepted and assigned error as follows: "(1) That the court erred in pronouncing judgment on an invalid and insufficient indictment. (2) That the first count in the bill of indictment does not constitute a criminal offense upon which a valid judgment could be entered under the laws of the State of North Carolina. Aaron Goldberg, W. Brantley Womble, for defendant."

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*Aaron Goldberg and W. Brantley Womble for defendant, H. E. Laing.*

CLARKSON, J.   Was judgment rendered contrary to law in the court below on an invalid and insufficient indictment?   We think not.

Did the first count in the bill of indictment constitute a criminal offense under the laws of North Carolina, upon which a valid judgment could be rendered?   We think so.

In *S. v. Warren,* 113 N. C., 683, it was held: "Where a defendant pleads guilty, his appeal from a judgment thereon cannot call into question the facts charged, nor the regularity and correctness of the proceedings, but brings up for review only the question whether the facts charged and admitted by the plea, constitute an offense under the laws and Constitution."   At p. 684, it is said: "The appeal could only bring up for review the question whether the facts charged, and of which the defendant admitted himself to have been guilty, constitute an offense punishable under the laws and Constitution.   Wharton Cr. Pr. & Pl., 9th Ed., sec. 413."   *S. v. McKnight,* 210 N. C., 57; *S. v. Cox,* 216 N. C., 424 (425).

Defendant contends that there was error in the judgment in the court below, and this contention is presented by his appeal from the judgment to this Court.   This brings the record here for our consideration. *Dixon v. Osborne,* 201 N. C., 489 (495); 8 R. C. L., sec. 85.

In 22 C. J. S., p. 657, speaking to the subject, we find: "A plea of guilty, in general, waives all defenses other than that the indictment, or information charges no offense."

The defendant Laing, having waived bill and all irregularities therein, and having pleaded guilty, as upon bill found, to the unlawful possession and distribution of slot machines prohibited by law, the question of the sufficiency of the bill of indictment shown in the record is not necessarily presented by the appeal, but we think the bill properly charged a criminal offense under the statutes now in force, and that defendant's plea of guilty rendered him amenable to the sentence pronounced thereon by the court.

Chapter 196, Public Laws 1937 (N. C. Code, 1939 [Michie], secs. 4437 [t], 4437 [r], and 4437 [v]).   The title is "An Act to Prohibit the Manufacture, Sale, Possession and Use of Slot Machines, Gambling Apparatus and Devices."   Section 1.   "That it shall be unlawful to manufacture, own, store, keep, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to sell, rent, lease, let on shares, lend or give away, or to permit the operation of, or for any person to permit to be placed, maintained, used or kept in any room, space or building owned, leased or occupied by him or under his management or control, any slot machine or device."   Sec. 3. *"That any machine, apparatus or device is a slot machine or device within the provisions of this Act if it is one that is adapted, or may be readily con-*

*verted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object, such machine or device is caused to operate or may be operated in such manner that the user* may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or any check, slug, token, or memorandum, whether of value or otherwise, or which may be exchanged for any money, credit allowance, or anything of value, or which may be given in trade, *or the user may secure additional chances or rights to use such machine, apparatus or device;* or in the playing of which *the operator or user has a chance to make varying scores or tallies upon the outcome of which wagers might be made,* irrespective of whether it may, apart from any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication or weight, entertainment or other thing of value.  This definition is intended to embrace all slot machines and similar devices except slot machines in which is kept any article to be purchased by depositing any coin or thing of value, and for which may be had any article of merchandise which makes the same return or returns of equal value each and every time it is operated, or any machine wherein may be seen any pictures or heard any music by depositing therein any coin or thing of value, or any slot weighing machine or any machine for making stencils by the use of contrivances operated by depositing in the machine any coin or thing of value, or any lock operated by slot wherein money or thing of value is to be deposited, where such slot machines make the same returns of equal value each and every time the same is operated and does not at any time it is operated offer the user or operator any additional money, credit, allowance, or thing of value, or check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for money credit, allowance or thing of value or which may be given in trade or by which the user may secure additional chances or rights to use such machine, apparatus, or device, or in the playing of which the operator does not have a chance to make varying scores or tallies." Sec. 5. "That an article or apparatus maintained or kept in violation of this Act is a public nuisance."   (Italics ours.)

This Act set forth above has been held constitutional in *Calcutt v. McGeachy,* 213 N. C., 1.   In that case, at pp. 5-6, we find the following: "The above definition manifests the intention of the Legislature to distinguish the *bona fide* merchandise vending machines, picture machines, music machines and machines of like character from well recognized types of gambling slot machines.  The line of distinction is illustrated in the judgment below, wherein type 12 is separated from those types in which there is an element of chance in some form even though such element be only that of making varying scores or tallies on which wages may be made."   The bill of indictment in the present action charges an

offense under sec. 3, *supra,* and is drawn in conformity to the wording of the statute.

In *S. v. George,* 93 N. C., 567 (570), *Ashe, J.,* for the Court, said: "The indictment strictly follows the words of the statute, and that is laid down in all the authorities as the true and safe rule. It is true there are some few exceptions, but we do not think they embrace this case." *S. v. Leeper,* 146 N. C., 655; *S. v. Puckett,* 211 N. C., 66 (73).

The bill of indictment above set forth follows the language of an Act declared constitutional and prohibits the ownership or distribution of any slot machine that is adapted for use in such a way that as a result of the insertion of any piece of money or coin or other object the machine may be operated in such a manner that *"the user may secure additional chances or rights to use such machine, apparatus or device."*

The defendant contends that it was the legislative intent to repeal the portion of the 1937 Slot Machine Act, under which defendant was indicted and judgment pronounced, by the Revenue Act of 1939. We cannot so hold.

The Revenue Act—Public Laws 1939, chapter 158, sec. 130, subsecs. 1, 2 and 3, reads as follows: "(1) It shall be unlawful, unless licensed as hereinafter provided, for any person, firm or corporation to own, operate or maintain in any place of business or other place for the purpose of being operated for gain or profit any machine or device operated upon the coin-in-the-slot principle or operated otherwise in which is kept any article to be purchased or any machine wherein may be seen any picture or heard any music or slot weighing machine or any machine for the making of stencils or any slot lock or any machine or device for the playing of games or amusement of the players thereof, when a uniform price shall be fixed for the operation of said device by the insertion of a coin in the slot or otherwise, pursuant to which operation the player or user thereof may not make varying scores or tallies or when such operation thereof may or may not result in some combinations of symbols shown or indicated thereon. *Provided, such varying scores and tallies or combination of symbols do not cause such machine or device to vend automatically any slug, premium, prize, coupon, reward, refund or rebate, or other thing of value, which might be used in the further operation of such device, or for which no cash value is received.* Provided further, this section shall not apply to slot telephones, slot luggage or parcel lockers or stamp machines. (2) Any person, firm or corporation who engages in the business of leasing, renting, letting on shares, selling or who engages in the business of placing on location, within this State, any of the above types of machines, or devices shall before engaging in such operation, first apply for and obtain from the Commissioner of Revenue what shall be known

as an annual operator's occupational license, for the privilege of engaging in the said business and shall pay therefor an annual license tax of one thousand dollars ($1,000). The license tax herein provided shall cover an annual privilege tax as provided by law and shall be payable on or before the first day of June of each year. Provided, the above annual operator's occupational license tax shall not apply to any person, firm, or corporation engaged in the business of operating any machine that vends any article of merchandise, music machines, weighing machines, and stencil making machines, but same shall apply to persons engaged in the business of operating all types of amusement machines. (3) In addition to the above license tax every person, firm or corporation operating any of the above mentioned machines or devices shall apply for and obtain from the Commissioner of Revenue what shall be termed a State-wide license for each machine operated and shall pay therefor the following annual tax," etc. (Italics ours.)

Part subsec. 5, is as follows: "It is the intention of this section to license and permit the operation of only legal machines as defined in subsection one of this section *and not the intention to license or legalize any gambling machine or device, or any other machine in connection with the operation of which there is given or allowed any premium, prize, coupon, reward, refund or rebate.*"

It will be noted that the Act of 1937 is a Public Act, known as the Flanagan Act, and is a separate and distinct Act prohibiting "the manufacture, sale, possession and use of slot machines, gambling apparatus and devices." The modification of 1939 is a revenue Act.

In *McCormick v. Proctor,* 217 N. C., 23 (26), it is held: "Chapter 158, Public Laws 1939, expressly prohibits certain types of slot machines and permits other types of slot machines as lawful."

We think the proviso in the above section leaves intact the Flanagan Act, under which defendant is indicted. The express language of this proviso admits of no interpretation except that the type of machine described in the first count of the bill of indictment is the type of machine that is still prohibited by the Flanagan Act, chapter 196, of the Public Laws of 1937, and that it was definitely not the intention of the Legislature to modify the section of the 1937 Act here under consideration. The language of the proviso specifically states that no machine is made lawful, and excludes a machine from being licensed, on which varying scores and tallies or combination of symbols cause the machine to vend automatically any slug, premium, prize, coupon, reward or rebate, or other things of value, *which might be used in the further operation of such device,* or for which no cash value is received. The additional chances or rights to use such machine which may be secured on the machine admittedly owned and operated by the defendant, very

clearly constitutes a "premium or prize or reward" entitling the player to further operation of the device. The use of the word "vend" is the equivalent of the word "give" or any similar word which would mean to provide the player with additional plays, or free plays upon making certain scores.

The Revenue Act itself provides for its construction in accord with the above by the language found in subsection (5) of section 130 (ch. 158, Laws 1939), *supra:* "It is the intention of this section to license and permit the operation *of only legal machines* as defined in subsection one of this section *and not the intention to license or legalize any gambling machine or device, or any other machine in connection with the operation of which there is given or allowed any premium, prize, coupon, reward, refund or rebate.*" The words above quoted and underscored, "given or allowed," provide the legislative interpretation of the word "vend" employed in the proviso of subsection (1), and eliminate any question which might otherwise exist as to the construction to be placed on the word "vend." Thus the Legislature itself has taken the precaution to dispel any doubt as to its intention that any slot machine which may be operated so as to give or allow free games, is still considered illegal, and that portion of the 1937 Act which so declares is still in full force and effect. This being true, the facts alleged in count one of the bill of indictment do constitute a criminal offense, because the operation and ownership of the type of machine therein described is within the purview of the 1937 Act which still prevails.

In *Hinkle v. Scott,* 211 N. C., 680 (682), it is said: "The payment of State and county license tax on slot machines would not justify the operation of those machines which come within the definition of unlawful devices set forth in the statutes."

It is a vain thing for the defendant to argue that machines which are gambling devices, in and of themselves, are made legal by the Revenue Act of 1939. Again, it is submitted that such intention is expressly disclaimed by the Act itself, in subsection (5) of section 130, which provides that "It is . . . not the intention to license or legalize any gambling machine or device . . ." Lest it be attempted to distinguish these cases because the slot machines therein considered emitted token or checks, whereas it does not appear that the one in the instant case did, it should be pointed out that these decisions hold that the thing played for and received is actually the right to operate the machine an additional time or times, and not the token which represents that value. We think the position here taken is borne out by authorities in other jurisdictions. *Painter v. State,* 163 Tenn., 627, anno, in 81 Am. Law Rep., p. 173 (174); *Gaither v. Cate,* 156 Md., 254, 144 A., 239, 244; *Rankin v. Mills Novelty Co.,* 182 Ark., 561, 32 S. W. (2d), 161; *State*

*ex rel. v. Marvin* (Iowa), 233 N. W., 486; *Harvie v. Heise,* 150 S. C.,
277, 148 S. E., 66, 68; *State v. Mint Vending Machine Co.,* 85 N. H.,
22, 154 A., 224, 228; *Green v. Hart* (D. C.), 41 F. (2d), 855, 856."

In 24 Amer. Jurisprudence, sec. 35, p. 422, is the following: "In
general, however, a slot machine which, in return for a coin deposited
therein, dispenses merchandise of the value of such coin, accompanied
at occasional and uncertain intervals by a varying amount of money,
trade checks, or coupons, or more broadly, one which provides an ele-
ment of chance, is a gambling device. . . . According to the gen-
erally prevailing opinion, where the return to the player is thus depend-
ent on an element of chance, a slot machine is a gambling device, even
though the player is assured of his money's worth of some commodity,
and, hence, cannot lose. Also, according to the great weight of authority
a slot machine is not rendered innocuous by the fact that it indicates
in advance of each deposit exactly what it will dispense, since it is con-
sidered that in such instances, the player gambles not on the immediate
return for the coin he deposits, but on the hope or chance that the indi-
cator will show a profit on his next play. . . . Furthermore, a
machine which returns merchandise of the value of the coin played
therein, and, in addition, a chance of receiving a varying amount of
checks which may be used to play the machine for amusement only is a
gambling device, the right to continue the operation of the machine for
amusement being a thing of value within statutes directed against
gaming."

In *S. v. Humphries,* 210 N. C., 406, construing slot machine acts, at
p. 410, it is said: "The object of all interpretation is to determine the
intent of the lawmaking body. Intent is the spirit which gives life to
a legislative enactment. The heart of a statute is the intention of the
lawmaking body."

We think the construction here given is the logic of the situation.
The statute under which the defendant wishes to call to his aid and to
repeal the Flanagan Act, declared constitutional by this Court, is a
revenue provision in the Revenue Act. The General Assembly in this
Revenue Act declares its intention in no vague or uncertain language,
that the intention is to license and permit the operation of *only legal
machines* as defined in the section, *"and not the intention to license or
legalize any gambling machine or device."* When this language was
used in the Revenue Act, the Flanagan Act was on the statute books
unrepealed and declared constitutional by this Court. The defendant
is convicted of its violation. If the drafters of the Revenue Act, which
passed the General Assembly, wanted to repeal the Flanagan Act, why
was it not done by clear language? The presumption is that it did not
intend to do so. There has long been recognized a difference between

"games" of skill and chance. The former, like ten-pins, bowling, archery, "shooting for turkey," and other similar trials of skill, are lawful. The State long ago outlawed gambling by every species of games of chance, and, particularly, has passed comprehensive laws prohibiting the operation or possession of slot machines adaptable for that purpose. These statutes have been upheld by this Court as within the police power of the State. *S. v. Humphries, supra; Calcutt v. McGeachy,* 213 N. C., 1.

We conclude that the General Assembly did not intend to license unlawful slot machines and make them the subject of revenue.

For the reasons given, the judgment of the court below is
Affirmed.

STACY, C. J., concurring in result: On the hearing, the defendant H. E. Laing, through counsel, pursuant to the provisions of C. S., 4610, waived bill and entered plea of guilty, as upon bill found, charging him with "unlawful possession and distribution of slot machines prohibited by law." To what extent, therefore, the 1937 Flanagan Act has been modified by subsequent legislation is not necessarily presented on the instant record. Nor is it desirable that we here enter upon a discussion of the subject. Certainly there is no presumption as to what the General Assembly intended to do about it. *Cf. S. v. Dixon,* 215 N. C., 161, 1 S. E. (2d), 521. The question more properly arises in two appeals by J. N. Finch, Nos. 442 and 443 on our docket, where no waivers appear, but the defendant entered pleas of guilty on first count in bills as charged. Suffice it here to say the law forbids the possession, use, or operation of certain slot machines, *Calcutt v. McGeachy,* 213 N. C., 1, 195 S. E., 49, and permits the possession, use and operation of others, under license, *McCormick v. Proctor,* 217 N. C., 23, 6 S. E. (2d), 870. The defendant waived bill and pleaded guilty to such unlawful possession and distribution of slot machines as is prohibited by law. This renders the present appeal feckless.

BARNHILL and WINBORNE, JJ., join in this opinion.