### THIRD CRIMINAL JUDICIAL DISTRICT COURT OF HUDSON COUNTY.

STATE OF NEW JERSEY v. HUMBERT BETTI.

Decided September 29, 1943.

For the state, on behalf of complaining witness, *Wilbur L. Ross.*

For the defendant, *Nicholas S. Schloeder.*

LUNN, D. C. J.   Madio Riccelli, a resident of the Town of West New York, made a sworn complaint in this court, charging that on or about June 16th, 1943, Humbert Betti, the defendant herein "being then and there the tenant in possession of store premises known as No. 319-70th Street in the Town of Guttenberg, County of Hudson and State of New Jersey, did then and there have in his possession in said premises a device in the nature of a slot machine, which may be used for the playing of money or other valuable things, contrary to *N. J. R. S.* 2:135–2." This statutory provision provides that "Any person who shall have or keep in his place of business, or other premises, any slot machine or device in the nature of a slot machine, which may be used for the playing of money or other valuable thing, shall be guilty of a misdemeanor."

The defendant was arrested on a warrant in the store described in the complaint, and a device in his possession commonly known and described as a pin ball machine was seized.   He was represented by counsel, pleaded not guilty, and elected to stand trial in this court, by waiving his right to indictment and trial by jury.

Because of the absence of the Prosecutor of the Pleas, or his representative, the court permitted the attorney for the complaining witness, as *amicus curiæ,* to prosecute on behalf of the state.

The complaining witness testified that on the day he made the complaint, he saw the defendant and the seized pin ball machine, in the store at 319 Seventieth Street, Guttenberg, and that later that day, he accompanied the sergeant-at-arms of this court to the store, where they found the defendant, who admitted that he occupied the store as a tenant and was the owner of the pin ball machine involved.   On cross-examination, the witness stated he had not seen anyone actually playing the pin ball machine.

The sergeant-at-arms testified that the defendant had told him that "a couple of groups of people had been in the store to play the machine since he put it in," in all other aspects his testimony corroborated that given by the complaining witness.

The small store in which the pin ball machine was found was open to the public, and appears to have contained nothing but the machine itself. It was located about a block and a half distant from a public school, in a neighborhood of stores and dwellings. There was no sign on it to indicate the name of its proprietor, or the nature of the business conducted therein.

The pin ball machine was received in evidence and was found to consist of a frame, rectangle cabinet with legs at the corners elevating it to a horizontal, waist-high position with one end slightly higher, so that an incline surface was provided. At the higher end and rising at right angles thereto, was a glass panel scoring board, containing two rows of figures arranged in arithmetical multiples of 1,000 and 10,000. The top of the cabinet was encased in a glass frame displaying a depressed playing surface on which was prominently depicted in a garish manner, patriotic subjects, such as the Lexington Minuteman and units of the United States fighting services and the slogans "Buy Defense Bonds and Stamps" and "Buy Bonds." Arranged about the playing surface were transparent mushroom shaped contact points in various bright colors. The machine was placed in operation by the injection and deposit in the cabinet of a five cent piece which had been placed in a coin slot provided therefor at the front of the machine. This made available for play five metal balls which were propelled one at a time to the elevated end of the playing surface by the player drawing back and releasing a spring plunger. The balls motivated by gravity then rolled down the playing surface through spaces provided for their passage, striking some of the contact obstructions, thereby establishing electrical connections which caused a succession of lights to flash on and off, bells and buzzers to sound and scores to light up on the score board, until the balls finally came to rest in a trough at the lower end of the board. If the balls struck all of the seven contact points arranged in the shape of a "V," identified by the letters "Defense," the score was doubled. The object of the game was to obtain a high score, and the point from which the balls start their meandering course was determined by the distance the plunger was withdrawn before being released.

Three patented keys, giving access to the interior of the cabinet where the machine's mechanism and coin cache were located, were also received in evidence.

With the exception that the machine's mechanism was not set to make available the playing of free games and no means were provided for the rendering of any other reward the machine was substantially of the same construction as those described in *Hunter* v. *Teaneck,* 128 *N. J. L.* 164; 24 *Atl. Rep.* (2d) 553, and in *Stafford* v. *Garrett,* 128 *N. J. L.* 623; 28 *Atl. Rep.* (2d) 289. Utilizing a patriotic decore as a decoy the machine for all practical purposes appeared to be nothing more than a glamorized version of the pin ball games with which the public is already well acquainted.

The defendant testified on his own behalf that the machine was sold to him by its manufacturer, the Genco Manufacturing Co., of 2621 North Ashland Avenue, Chicago, Illinois, as a purely amusement device, which was incapable of rendering any prizes, or being used for gambling, or its furtherance and fully complied with the anti-gambling laws of the different states. He demonstrated, by actual play, the operation of the machine. There was received in evidence on his behalf, without objection, a certified copy of an ordinance of the Town of Guttenberg licensing the ownership and operation of pin ball machines and a copy of a United States tax report made for the machine as a coin operated amusement and gaming device.

On cross-examination, the defendant played the machine blindfolded and attained no appreciable different scores than those he had received when not so handicapped.

The state offered in rebuttal, instructions furnished by the manufacturer of the machine to the defendant, which described several simple methods of making adjustments in the machine's mechanism, so that when certain high scores were made the player would be rewarded with from one to three free games.

The fundamental question presented for decision is whether or not, the keeping of a pin ball machine for the use of the public in store premises, constitutes a violation of the statute, where there is no proof that the machine had been used or

was intended for use for gambling purposes, and where it contained no device for the recording or paying of a reward, although capable of being readily converted to provide free replay privileges.

It was contended that the statute, enacted in 1898, does not contemplate this contemporaneous type of pin ball game. Modernized versions of the game of bagatelle have been held to be comprehended in like statutes, *Territory* v. *Jones*, 14 *N. M.* 579; 99 *Pac. Rep.* 338; 20 *Ann. Cas.* 131, and the legislature has forestalled attempts to circumvent its provision as in the case at bar by the use of the broad language "Any slot machine or device in the nature of a slot machine, or with any other instrument, engine, apparatus or device having one or more figure or figures, number or numbers thereon * * *." *N. J. S. A.* 2:135–1.

*Hunter* v. *Teaneck, supra,* the leading case in this state on the subject of pin ball games and the case of *Stafford* v. *Garrett, supra,* which follows it, while holding that pin ball games are games of chance, and, therefore, gaming devices within the meaning of the statute, do not dispose of the question presented, as in both of these cases, the pin ball games involved awarded free games, and it is contended that by the elimination of this feature, the machine is rendered an innocuous device of amusement and recreation.

We find it difficult to believe that the pin ball machine involved, kept in a store located near a public school, was intended for use merely as an innocent "pastime and pleasing game."

The courts of this state are fully aware of the prevailing utilization of pin ball games for the vicious exploitation of the young, the idle, the improvident and the unwary, and this court cannot close its eyes to the repeated ingenious attempts to so modify the design or operation of pin ball games so as to take them out of the statutory prohibition and thereby make available to the unscrupulous the rich profits available from this illicit source. The courts look to the substance of the game, under whatever guise it is conducted, *Smith* v. *State*, 17 *Tex.* 191, and the law will reach beyond the outer form and take hold of the substance of the thing itself. "No

dressing, however adroit can make legal that which is illegal," *State* v. *Berger,* 126 *N. J. L.* 39, 43; 17 *Atl. Rep.* (*2d*) 167, 169, and the pin ball game involved can best be described in the forceful language used by Mr. Justice Perskie in the Teaneck case, "The pin ball machines involved are nothing but ingeniously designed and purposefuly constructed mechanical gaming devices to appeal to, induce, lure and encourage the gaming instinct in the public generally and children particularly." The test of illegality is "does the machine encourage the gambling instinct?" *State, ex rel. Dussault* v. *Kilburn* (1941), 111 *Mont.* 400; 109 *Pac. Rep.* (*2d*) 1113.

The evidence has established that the pin ball machine involved is a device for the playing of a game of chance, as the results obtained from its play are determined by luck and not by "adroitness, practice, skill or judgment in play," *Neal's Case,* 22 *Gratt* (*Va.*) 917, and chance rather than skill is the dominant element involved therein. *People* v. *Lavin,* 179 *N. Y.* 164; 71 *N. E. Rep.* 753; *Commonwealth* v. *Plissner* (1936), 295 *Mass.* 457; 4 *N. E. Rep.* (*2d*) 241.

It is further contended that the mere possibility of converting a pin ball machine into one which will afford free games does not bring it within the scope of the statute  The public policy of our state against gambling in all forms is enunciated in article IV, section 7, paragraph 2 of our constitution, which outlaws games of chance in any form and all gambling devices. The statute is intended to adequately implement the constitutional mandate and "to strike at the evil in its inception by a measure that is primarily preventative in character," *State* v. *Murzda,* 116 *N. J. L.* 219, 226; 183 *Atl. Rep.* 305, 309, it is the patent intention of the legislature to discourage and repress gambling by eliminating the machines manufactured or sold for gambling purposes, and the law is to be construed so as to accomplish the suppression of the mischief against which the statute is directed. *People* v. *Gravenhorst,* 32 *N. Y. S.* (*2d*) 760.

Until 1934, the law of New York State condemned slot machines as gambling devices only when they contained means of emitting something of value. Our statute, on the

other hand, has never contained any such limitation. "The life of the law has not been logic, it has been experience," and our courts have given our statute a content sufficient to meet "the felt necessities of the time, the prevalent moral— theories, intuitions of public policy * * *" and have thereby obtained substantially the same result secured by the enactment of the amendment to section 982, paragraph 2 of the Penal Law of New York which declares a pin ball game to be illegal "* * * If it is one that is adapted or may readily be converted into one that is adapted, for use in such a way that as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate, or may be operated by reason of any element of chance, or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing, of value, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, or the user may secure additional chances, or rights to use such machine, apparatus or device; irrespective of whether it may apart from any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value."

If a pin ball machine will render free games after simple changes are made in its mechanism it is a gambling device. *Triangle Mint Corp.* v. *Mulrooney,* 232 *App. Div.* 783; 248 *N. Y. S.* 880. What can be done with the machine to make it a gambling device is the criterion for determining its true character. *People* v. *Fitzgibbons* (1942), 33 *N. Y. S. (2d)* 377.

The licensing of the pin ball machine under the provisions of an ordinance of the Town of Guttenberg and the imposition of a tax thereon as a coin operated amusement and gaming device under the Federal Revenue Act, 26 *U. S. C. A. Int. Rev. Code,* § 3267, does not legalize its possession. *Hunter* v. *Teaneck, supra,* 128 *N. J. L.* 169; 24 *Atl. Rep. (2d)* 553.

It was urged on behalf of the defendant that the mere playing of the machine did not constitute the playing of a "valuable thing." Anything which affords the lure to indulge the gambling instinct, is a valuable thing within the meaning of the statute, *Hunter* v. *Teaneck, supra,* and "amusement" is a thing of value, *People* v. *Gravenhorst, supra,* and it has been held repeatedly that the chance of receiving the privilege of continuing amusement of this kind without charge is a valuable thing, *State* v. *Baritler,* 131 *Me.* 285; 161 *Atl. Rep.* 671; *Myers* v. *Cincinnati,* 128 *Ohio St.* 235; 190 *N. E. Rep.* 569; *Colbert* v. *Superior Confection Co.,* 154 *Okl.* 28; 6 *Pac. Rep.* (*2d*) 791; *Harvie* v. *Heise,* 150 *S. C.* 277; 148 *S. E. Rep.* 66; *Painter* v. *State,* 163 *Tenn.* 627; 45 *S. W. Rep.* (*2d*) 46.

A pin ball machine, when adapted, as in the instant case, for conversion into a "free play" machine, violates the statute. *People* v. *Bitter* (1942), 32 *N. Y. S.* (*2d*) 176; *People* v. *Boxer* (1940), 24 *N. Y. S.* (*2d*) 628.

The defendant relies strongly on a case decided January 28th, 1943, in the Superior Court of Pennsylvania, *In re Wigton,* 151 *Pa. Super.* 337; 30 *Atl. Rep.* (*2d*) 352, which holds that pin ball games are not gambling devices merely because they provide free play, which in its opinion is not a "valuable thing." Even if it were not for the decisions in *Hunter* v. *Teaneck, supra,* and *Stafford* v. *Garrett, supra,* we would be disinclined to follow this case, as the Pennsylvania Court seeks and finds a definition for gaming in its own Criminal Code, § 605, 18 *P. S. Pa.,* § 4605, which excepts from its provisions "games of recreation * * * such as * * * bagatelle * * * where no betting is allowed" and holds therefore that its authority to destroy such machine exists only where it is "satisfied that such * * * machine was employed and used for the purpose of unlawful gaming * * *," and the court therein frankly admits that the courts of other states may well reach another conclusion where the statute to be interpreted or the public policy to be enforced differs from theirs.

The defendant's intention as to his contemplated use of the pin ball machine is immaterial, *People* v. *Fitzgibbons,*

*supra,* and proof is not necessary that gambling has actually taken place, or that a wager has been made or a pay-off obtained. The statute makes the mere public possession of a pin ball machine illegal.

The pin ball machine involved is deserving of the severest condemnation, in addition to its other reprehensible features, it has the effrontery to utilize the patriotic appeal to "Buy Bonds" to divert money which might well be used for this laudable purpose into the coffers of the unscrupulous, who for their own selfish gain would debase and pervert every public and private virtue.

Therefore the defendant is found guilty of publicly possessing a device in the nature of a slot machine which may be used for the playing of valuable things, and he is sentenced to pay a fine of one hundred ($100) dollars or be imprisoned for thirty days in the Hudson County penitentiary and the pin ball machine involved is ordered destroyed as directed by statute.