

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 5, 1951

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-1271

Re: Applicability of House Bill
No. 326, making possession
of certain gaming devices a
felony, to "pinball" or "mar-
ble" machines which pay off
the winner in free games
rather than cash or physical
property.

Dear Sir:

Your recent request for an opinion asks, in general,
whether House Bill No. 326, Acts 52nd Leg., 1951, ch. 178, p.
299 (codified as Article 642a, V.P.C.), makes it unlawful to "own,
keep or possess" devices commonly known as "pinball" or "mar-
ble" machines which automatically deliver free games to the win-
ner instead of cash or physical property. You specifically inquire
as to whether these "pinball" or "marble" machines are prohibited
"slot machines," as that term is defined in Section 1 of the Act.

The machines about which you inquire are described in
your letter as machines "whose users propel balls with a plunger"
and which are designed or adjusted so that the mechanism "will
automatically permit a free play when a certain score is reached"
without the deposit of additional coins therein. You further char-
acterize these devices with the following statement:

" 'Pinball' or 'marble' machines do not contain a
drum or reel with insignia thereon. Rather, they oper-
ate primarily through a series of electrical cross-
connections, which are set in motion when the ball
touches certain trips and switches, and which reflect
themselves in lights or computers that reveal the
player's score."

House Bill No. 326 provides, in part, as follows:

"Section 1. The term 'slot machine' as used in this Act, means:

"(a) Any so-called 'slot machine' or any other machine or mechanical device, by whatsoever name known, an essential part of which is a drum or reel with insignia thereon, and

"(1) which when operated may deliver, as the result of the application of an element of chance, any money or property or other valuable thing, or

"(2) by the operation of which a person may be entitled to receive, as the result of the application of an element of chance, any money or property or other valuable thing; or

"(b) Any machine or mechanical device designed and manufactured or adapted to operate by means of the insertion of a coin, token, or other object and designed, manufactured or adapted so that when operated it may deliver, as the result of an application of an element of chance, any money or property; or

"(c) Any subassembly or essential part intended to be used in connection with such machine or mechanical device.

"Sec. 2. Whoever shall manufacture, own, store, keep, sell, rent, lease, let on shares, lend or give away, transport or possess a slot machine, as defined in Section 1, shall be guilty of a felony and upon conviction thereof shall be confined in the State penitentiary not less than two (2) years nor more than four (4) years."

We agree with your own interpretation of your first question -- that Section 1(a) is not applicable to marble machines which have no "drum or reel," and that it is to Section 1(b) that we must look to determine whether marble tables and pinball machines are included within the Act.

Hon. Robert S. Calvert, Page 3 (V-1271)

It is obvious that coin-operated marble and pinball machines which automatically deliver, as the result of an application of an element of chance, money or physical property, are within the definition of the term "slot machine" in Section 1(b). Your primary concern is whether such machines are included within the statutory definition if they pay off the winner in free games rather than cash or physical property. This question is phrased by you as follows:

"SECOND QUESTION: Are 'pinball' or 'marble' machines which do not deliver money or physical property to a player, but which can be adjusted to award free games, 'slot machines' within the meaning of the above-quoted definition, said definition being the one which is contained in Subdivision (b) of Section 1 of House Bill 326 ?"

We assume that you are interested only in those machines which are constructed or adapted to award free games rather than those which can be so constructed or adapted. There is a difference. Hightower v. State, 156 S.W.2d 327 (Tex. Civ. App. 1941). The words of the statute cover only that type of machine which is "designed and manufactured or adapted so that when operated it may deliver . . . any money or property."[1] Our answer to your question will refer only to those machines which are designed and manufactured or adapted so as to automatically release or deliver free games to the winner.

At the outset, the treatment of these so-called "free game" machines in the law and public policy of this State should be reviewed in order to keep in mind the nature of the subject matter being dealt with by the 52nd Legislature. Marble and pinball machines which pay the winner in free games instead of cash have been condemned by previous statutes and court decisions of this State the same as gaming devices which pay off in cash or physical property. State v. Langford, 144 S.W.2d 448 (Tex. Civ. App. 1940); Broaddus v. State, 150 S.W.2d 247 (Tex. Crim. 1941);

---

[1] The statute also covers "any subassembly or essential part intended to be used in connection with such machine or mechanical device." Sec. 1(c), supra.

Hightower v. State, 156 S.W.2d 327 (Tex. Civ. App. 1941); Martin v. State, 162 S.W. 722 (Tex. Crim. 1942).  They have not been considered mere amusement games for "skill or pleasure" by previous Legislatures and the Texas Courts.  The above cited cases held that the keeping or exhibiting of such machines is prohibited by Article 619, V.P.C., which fixes a penitentiary sentence for violation thereof.  Article 634, V.P.C., declares the mere existence of this type of gaming device "against public policy and a public nuisance."  Williams Mfg. Co. v. Prock, 184 F. 2d 307 (U.S. Ct. App., 5th Cir. 1950).

It is a proper presumption that the Texas Legislature, in considering H.B. 326, had knowledge of the fact that previous statutes, court decisions and declarations of public policy have placed free game pay-off machines in the same category as slot machines, gaming tables, and other devices which pay off in money or physical property and that the same penalties are provided for keeping and exhibiting such machines.

Therefore, the question which you have posed is whether the Legislature, knowing the unlawful and felonious nature of these free game pay-off machines, intended by its wording of Section 1 (b) to exempt them from the new law prohibiting possession of other gaming devices of the same category.  Specifically, did the Legislature use the word "property" in Section 1(b) in its broad sense so as to include "free games," or was the word used in the narrow sense so as to mean "physical property" and thereby exclude free game machines?

Some courts have construed the word "property" in gaming statutes to include free games, and others have said that it does not include them.  In almost all instances the conflicting court decisions are based upon differences of opinion as to the value of free games and the variation of public policy with relation to free game pay-off devices in the different States.

We have conducted an exhaustive research of the authorities to determine the fundamental considerations involved in the interpretation of statutes of this character.  From this research we are convinced that the great weight of authority in the United States compels a construction of Section 1(b) of the Act as including such "free game" devices, and that the considerations given effect in such cases are in harmony with the prevailing case law in this State construing our gaming statutes.

　　　While the type of prize or award which determines in-
clusion of these devices within Section 1(b) is described as "mon-
ey or property," the cases dealing with this and similar expres-
sions are almost invariably bottomed on the conception of the
particular court as to the relative tangibility or value of the right
to amusement, as afforded by the free games. Thus, where the
court, as in the majority of the cases, considers amusement to be
of value, the free games are held to constitute "money or property,"
"property of value," "a valuable thing," etc. Those courts taking
a contrary view invariably base the decision on a conception that
the replay privilege is too inconsequential and trivial to be of
"value," or too intangible to constitute "property" within the mean-
ing of such statutes, and within the evil sought to be remedied
thereby.

　　　The basic divergence in the cases is best comprehended
by an examination of the decisions on the subject.

　　　Rankin v. Mills Novelty Co., 182 Ark. 561, 32 S.W.2d
161 (1930), is a leading case, and one of the earliest, on the sub-
ject. The Arkansas Supreme Court said, at page 162:

> "In order to constitute a gaming device under
> the statute, it must be one that is adapted or designed
> for the purpose of playing any game of chance or at
> which any money or property may be won or lost, and
> any one who shall bet any money or other valuable
> thing, or 'any representative of any thing that is es-
> teemed of value,' is guilty, under Section 2634 of Craw-
> ford & Moses' Digest, of betting on a gambling device.
> By section 2640 of the same chapter of the Digest 'gam-
> bling' is defined as the betting of any money or any val-
> uable thing on any game of hazard or skill. It is clear
> from these sections and the entire chapter on gaming
> that the word 'property', as used in section 2630, and
> the words 'valuable thing,' mentioned in other sections,
> are used synonymously, and that any valuable thing or
> 'any representative of any thing that is esteemed of
> value' is 'property' within the meaning of section 2630,
> supra. The machine in question is one which always
> gives in exchange for a nickel a package of mints, and,
> in addition to the mints, a number of 'slugs,' in vary-
> ing amounts from two to twenty, with which a game may
> be played, there being an element of chance in the number

> of slugs obtained for a nickel. Is the right to play a
> game obtained in the above manner 'property' or a
> 'thing of value' within the meaning of our statute pro-
> hibiting the setting up of gambling devices and gam-
> bling? We think it is. It is a matter of common know-
> ledge that the maintenance of places, having no value
> in themselves, but which are used for amusement only,
> are among the most remunerative kinds of property,
> such as miniature golf courses and other like means
> of amusement, and any thing that contributes to the
> amusement of the public is a thing of value. . . ."
> [Emphasis ours throughout this opinion.]

Howell v. State, 184 Ark. 109, 40 S.W.2d 782 (1931), follows the
Rankin case, supra, which in turn is followed in Steed v. State,
189 Ark. 389, 72 S.W.2d 542, 543 (1934), wherein the specific
statute involved in all those cases is quoted as prohibiting var-
ious games "at which any money or property may be won or lost."

In Boynton v. Ellis, 57 F.2d 665 (C.C.A. 10th, 1932),
the player of the device might receive tokens with which the ma-
chine could be replayed. Certain of the Kansas Statutes involved
prohibited certain games and devices played for "money or prop-
erty," and other of such statutes prohibited those where cash
prizes "or other valuable things are given." The court said, at
page 666:

> "It seems clear to us that these tokens or checks
> which are obtained by chance represent some value
> and constitute property. The best reason for this view
> is that the public is thereby enticed into patronizing
> the machines. It is the professed object of installing
> them. The tokens or checks may be likened to theater
> tickets in representing a means of amusement. The
> tickets have value. State v. Blair, 130 Kan. 863, 288
> P. 729; State v. Haining, 131 Kan. 854, 293 P. 952.

> ". . . The value may be slight, but still it is
> property, in that it affords amusement to the players
> which entices them into patronizing the machines."

The citation to State v. Haining is significant in that it held, in ef-
fect, that the amusement at a theater is the thing sold regardless
of whether tickets evidencing the right to such amusement are sold

to the recipient of the right.

Boynton v. Ellis, supra, is followed in Boynton v. Mills Novelty Co., 60 F.2d 125 (C.C.A. 10th, 1932).

Of similar effect is Colbert v. Superior Confection Co., 154 Okla. 28, 6 P.2d 791 (1931), the import of which is that "money, . . ., checks, credits or any representative of value" are classes of "property" within a statute using those terms in combination with the term "property." See, also, Mackay v. State, 83 P.2d 611 (Okla. Crim. 1938), citing other cases to the effect that the Oklahoma slot machine statute was intended to prohibit play on machines for "money or other property." The court cites several cases to the effect that the amusement of additional free plays has a value, small though it be.

People v. Settles, 78 P.2d 274 (Cal. Sup. Ct., App. Div. 1938), considered whether additional free plays to a winner constituted "property" under a California lottery statute, and held that "the duty of the operators of this game to permit the winner to play further games free is an obligation arising from contract," and constituted "personal property."

Kraus v. City of Cleveland, 135 Ohio St. 43, 19 N.E.2d 159 (1939), considered a statute prohibiting devices played for "gain" in connection with another statute prohibiting devices played for "money or other property." After holding that amusement is a thing of value, the court concluded that the machine was a gaming device under both statutes.

Middlemas v. Strutz, 71 N.D. 186, 299 N.W. 589 (1941), deals with a device under a North Dakota lottery statute where, to constitute the offense, it was "essential that the prize or award which the player may win shall be property or an interest in property." Conceding that a statutory definition of "personal property" applied, the court said:

> ". . . The language 'every description of money, goods, chattels [and] effects' is broad enough to include every statutory definition of personal property without regard to the particular division of our codes in which it may be found. The word 'effects' is one of broad significance. When used alone it has been held to include everything that 'can be termed of value.' . . .

". . . .

". . . When the player places his coin in the slot, he accepts that offer and acquires thereby an exclusive right, as against the owner and all others, to the use of the machine for the duration of at least one game. If the player is lucky and wins, the right to the exclusive use of the machine is continued for an indefinite duration. The right to use such a machine for entertainment purposes is a thing of value. . . . It is a thing subject to ownership and things subject to ownership are property. People v. Settles et al., 29 Cal. App. 2d Supp. 781, 78 P.2d 274.

". . . The machine here in suit, therefore, is one in the play of which, the player pays a valuable consideration for entertainment and an opportunity dependent chiefly upon chance to win a prize or award which is property. . . ."

In holding that free games are within a statute prohibiting games whereby "money or other thing may be won or lost," the court in Steely v. Commonwealth, 291 Ky. 554, 164 S.W.2d 977 (1942), held that free games are of sufficient value to fall within gaming statutes, giving particular attention to cases characterizing prohibited games as those wherein the player "hazards his money on the chance that he may receive in return money or property of greater value than he hazards." To the same general effect is Giomi v. Chase, 47 N.M. 22, 132 P.2d 715 (1942), which, in holding that free games are "anything of value," cites the language of Boynton v. Ellis, supra, that "the value may be slight, but still it is property, in that it affords amusement to the players which entices them into patronizing the machines."

Except for slight difference in legislative history and the verbiage of the Texas Act, and subsequent consideration of pertinent Texas decisions, our conclusion might be summed up in the comprehensive consideration of the point at issue in Commonwealth v. Rivers, 323 Mass. 379, 82 N.E.2d 216 (1948). The Massachusetts Statute prohibited a lottery to dispose "of any property of value." The device in question gave only free games. After an exhaustive citation of cases considering the meaning of various statutory phrases descriptive of prizes and awards or prohibited games, the court concludes:

"By the great weight of authority it is settled as
to machines or devices by the operation of which free
plays may be had by chance or hazard that the free
plays are something of value or property of value with-
in the meaning of the statutes involved, that it is the
right to operate the machine an additional time or times
that is the thing played for, and not the token which re-
presents the value.  There are cases in a few juris-
dictions where it has been held that free plays are not
per se things of value, but we are persuaded that the
contrary view supported by the great weight of author-
ity of other courts of this country is sustained by the
reasoning upon which the results of those cases are
based, and we are in accord therewith.  In the present
case it seems that no tokens representing free plays
were delivered by the machine, but rather that the
machine operated as to free plays by an automatic re-
corded score.  But as is said in Alexander v. Martin,
192 S.C. 176, 183, 6 S.E.2d 20, 23, 'It matters little
whether . . . [the right to play the machine without
additional cost] was evidenced by tokens or by an auto-
matic recorded score.'  And as pointed out before, it
is the free play itself that is the 'property of value'
however evidenced."

There are many other cases construing statutes which
do not use the word "property," but which discuss the relative
value of a free play under statutes which characterize the pro-
hibited prize as "thing of value" and other synonymous words.
Most of these cases characterize the "thing of value" with all
of the attributes of the term "property" in its broader sense,
and may be readily aligned with the "property" cases on the
basis of the fundamental concept of the relative value of the
prize.  They are:

Harvie v. Heise, 150 S.C. 277, 148 S.E. 66 (1929), noting
that since immense sums are paid for amusement it must have a
value; Gaither v. Cate, 156 Md. 254, 144 A. 239 (1929), comparing
free game to ticket to moving picture show and seeing no essential
difference; State v. Marvin, 211 Iowa 462, 233 N.W. 486 (1930), to
same effect; Green v. Hart, 41 F.2d 855 (Conn. Dist. Ct. 1930),
amusement from free play has value; State v. Mint Vending Machine,
Etc., 85 N.H. 22, 154 A. 224 (1931), comparing free plays to theater
ticket; White v. Hesse, 48 F.2d 1018 (Ct. of App., D.C. 1931), value

is the "right" to replay; Jenner v. State, 173 Ga. 86, 159 S.E. 564 (1931), comparing free plays to admission to movie; Snyder v. City of Alliance, 179 N.E. 426 (Ohio Ct. of App.1931), "amusement is a thing of value, for which more money is spent perhaps than for any other purpose;" Painter v. State, 163 Tenn. 627, 45 S.W.2d 146 (1932), noting that the "right" to free play has value; State v. Baitler, 131 Me. 285, 161 A. 671 (1932), holding that tokens "evidence right to operate the 'amusement.' Each was a ticket to part of the game;" and citing the Rankin case, supra, among others; Appeal of Mills Novelty Co., Etc., 316 Pa. 449, 175 A. 548 (1934), affirming and adopting opinion from lower court at 173 A. 753, citing among other cases Commonwealth v. Goldsmith, 17 Pa. Dist. & Co. R. 145, to the effect that tokens for replay for amusement have intrinsic value; City of Milwaukee v. Burns, 225 Wis. 296, 274 N.W. 273 (1937),. to the effect that since tokens could be used in place of nickels to replay pinball machine, they have value; Alexander v. Martin, 192 S.C. 176, 6 S.E.2d 20 (1939), one of first cases dealing with automatic award of free plays on "pinball" machine, holding that "amusement is recognized by the courts as a thing of value," and citing, among others, Harvie v. Heise, supra, to the effect that the thing actually received is the "right" to replay, regardless of whether automatic or evidenced by tokens; People v. Cerniglia, 11 N.Y.S.2d 5 (N.Y. City Magistrates Ct. 1939), free play is a "thing of value;" Couch v. State, 110 P.2d 613 (Okla. Crim. App. 1941), discussing value of free plays under statute classifying "amusement" along with "property, tangible or intangible .... or any representative of value or any other thing;" State v. Wiley, 232 Iowa 443, 3 N.W.2d 620 (1942), contains exhaustive citations, including Texas cases, supra, among the "great majority," compares the automatic free game devices to "token" devices, notes that free plays on mint vending machines are incidental to the sale of mints, while if a coin is inserted in the pinball machine solely for amusement, the value of free plays is measured by the value of the coin, and that "the rule is the same whether the machine emits disks with which it can be replayed or works automatically;" Hunter v. Mayor, etc., 128 N.J.L. 164, 24 A.2d 553 (1942), citing cases holding that amusement has value, and followed in Stafford v. Garrett, 128 N.J.L. 623, 28 A.2d 289 (1942); People v. One Pinball Machine, 44 N.E.2d 950 (Ill. App. Ct., 1942), contains exhaustive citations noting that the "valuable thing" won is the "right" to play additional games regardless of how that right is evidenced; State v. Betti, 34 A.2d 91 (N.J. Dist. Ct. 1943), reversed at 42 A.2d 640, infra, free game amuse-

ment "a valuable thing;" Oatman v. Davidson, 310 Mich. 57, 16 N.W.2d 665 (1944), observes that since the plays would ordinarily cost the player five cents each, the opportunity to have free plays is a thing of value, "and that there is no difference in principle between a trade check and a free play;" Thamart v. Moline, 66 Idaho 110, 156 P.2d 187 (1945), containing exhaustive discussion of cases and holding "right"to free play is a right of value.

Cases in the contrary category warrant closer analysis than the limits of this opinion permit in order to fully appreciate the basic divergence from the majority and the prevailing trend of Texas decisions, as hereafter demonstrated. However, significant points therein will be noted.

Davies v. Mills Novelty Co., 70 F.2d 424 (C.C.A. 8th, 1934), was concerned with a Nebraska Statute, which had not been construed by the state courts, prohibiting games of chance for "money or property" which the court construed to mean "money or other thing of value" but it follows certain minority decisions, hereafter noted, that mere amusement does not offer a sufficient incentive to gambling and that the machine "has no element of gain or loss, financial or otherwise."

Chicago Patent Corporation v. Genco, Inc., 124 F.2d 725 (C.C.A. 7th 1941), was a patent infringement case involving similar pinball machines, wherein defendant contended that the device was a gambling machine and beyond the protection of the patent laws. On the basis of Davies v. Mills Novelty Co., supra, the court defined a gaming device as one played for "gain," the test being whether it was designed for play for "money or property." Observing that "nothing of monetary value, nothing susceptible of purchase and sale passes to the successful player" [an obviously inaccurate statement], the opinion concluded that since issuance of a patent creates a prima facie presumption of utility, the absence of any showing by defendant to overcome such presumption and the findings of the trial court that the machine may be operated "without gain being a factor" and that it was capable of legitimate use, the court could not hold as a matter of law that it was inherently a gambling device.

State v. Waite, 156 Kan. 143, 131 P.2d 708 (1942), dealt with automatic award of free plays on a "pinball" machine under a statute prohibiting machines "designed for the purpose of play-

ing any game of chance for money or property" and with which persons are induced or permitted "to bet or wager any money or other things of value." The court noted that no "tangible" property was awarded, and rested its decision on whether such free plays constituted "property." It applied a rule of strict construction. Observing that the Kansas Statutes defined property, it would not resort to general definitions of the term. It then meticulously dissected the statutory definition of "personal property" as meaning "goods, chattels, effects, evidences of right in action, and all written instruments by which any pecuniary obligation, or any right or title to property, real or personal, shall be created, acknowledged, assigned, transferred, increased, defeated, discharged, or diminished," and concluded that "property" as there used meant tangible property -- something that could be carried physically. The court declined to discuss cases from other jurisdictions with the observation that they usually involved materially different statutes.

In re Wigton, 30 A.2d 352 (Pa. Super. 1943), involved the phrases "money or other property of value" as used in one statute and "money or other valuable thing" as used in another statute, and held that free games were neither "property of value" nor "other valuable thing." The decision applies a rule of strict construction and concludes that something tangible like "money" is contemplated by the combination of such words, expressly giving the terms a narrow meaning. It conceives the mischief to be remedied by the statute as not including the award of free games.

Washington Coin Machine Ass'n v. Callahan, 142 F.2d 97 (C.A.,D.C., 1944), involved the phrase "money or property" as used in the penal statutes of the District. On the basis of the foregoing cases in this category and others, the court concluded that free games were not of tangible or material value.

Like Commonwealth v. Rivers, supra, on the other side of the question, State v. One "Jack and Jill" Pinball Machine, 224 S. W.2d 854 (Mo. Ct. of App.1949), sums up the conception that free games are not "money or property" with exhaustive annotations and analysis of the cases. The Arkansas cases are given special attention and the main distinction drawn is that the Rankin case, supra, concluded that the terms "property" and "valuable thing" are used synonymously, while the Missouri Statute does not contain the phrase "valuable thing" or equivalent words. A rather lengthy discussion of the basis of the court's conclusion that free games are

Hon. Robert S. Calvert, Page 13 (V-1271)


not property may be summed up in the following paragraph from
the opinion, at page 861:

> "Does the player receive anything of financial or
> economic value? Rather isn't this so-called recrea-
> tion and amusement the antithesis of value? If one's
> time is worth anything, it is a loss instead of gain, a
> waste instead of reward. Hope of reward or gain, above
> the amount risked, is the lodestone of gambling. The
> fact that one has paid five cents for it does not conclu-
> sively fix that, or any other sum, as its value or any
> value at all."

Referring now to those decisions which, while not dis-
cussing the character of free plays as "property," do support the
contrary viewpoint that such free games are of inconsequential
value, we briefly note them:

Overby v. Oklahoma City, 287 P.796 (Okla. Crim. 1930),
holding that slugs good for free plays were not "something of value"
[it is noted that the case was tried on an agreed statement of facts
which recited that the slugs had no value]; People v. Jennings, 257
N.Y. 196, 177 N.E. 419 (1931), speaking of free plays won on a de-
vice, observes that "the product, however, is valueless from a
monetary standpoint, perhaps, if not from any other," and that the
omission of the phrase "other things of value" from the particular
statute speaking of "money, or any check or memoranda calling for
money" limits its application to things of money value; Mills Nov-
elty Co. v. Farrell, 64 F.2d 476 (C.C.A.2d 1933, affirming 3 F.Supp.
555), holding in effect that the "insubstantial amusement feature of
the machine" in aid of the sale of mints was not "any valuable
thing," under a Connecticut Statute, and observing that "one may
not suppose that a person desiring to gamble would put up money in
the hope of obtaining tokens which can be used only to produce in-
significant humorous sayings. The amusement feature of the ma-
chine does not make the machine a gambling device;" Mills Novel-
ty Co. v. Bolan, 3 F. Supp. 968 (N.Y., D.C. 1933), reluctantly fol-
lowing People v. Jennings, supra, holding that tokens usable for
free games are not of value. [The decision was affirmed at 68
F.2d 1009, on the authority of the Jennings and Farrell cases, su-
pra, but, as noted in Petition of Superintendent of Police, etc, 173
A. 753, 758, and State v. Wiley, supra, the United States Supreme
Court granted certiorari, later reversing without prejudice after
the New York statute was amended, which action casts a cloud on

the New York cases as authority on the subject.]; Commonwealth v. Kling, 13 A.2d 104 (Pa. Super. 1940), citing Pennsylvania cases, holds that slugs good for replay have no "intrinsic" value contemplated by statutes as theretofore construed; Gayer v. Whelan, 138 P.2d 763 (Cal. Dist. Ct. of App. 1943), cites cases to the effect that free plays are not of "material value," "sufficient value," or "tangible value," to constitute "things of value," and concludes that intangibles are not contemplated by the particular statute which speaks of winning or losing "merchandise, money, or articles of value, checks, or tokens, redeemable in, or exchangeable for money or any other thing of value;" State v. Betti, 42 A.2d 640 (N.J. Ct. of Quarter Sessions 1945), reversing 34 A.2d 91, supra, holds free games to be of recreational or amusement value only and not within statute condemning plays for "money or other valuable thing."

The foregoing amply demonstrates the basic considerations upon which the decisions in other states turn. A brief examination of the Texas cases should sufficiently indicate their consonance with the first line of authorities set out.

The first Texas case of significance is State v. Langford, supra, considering free game "marble machines" under Article 619, V.P.C., which prohibits gaming devices where "money or anything of value is bet thereon." Noting that the Arkansas Statutes are "similar in practically all respects" to the Texas Statutes, the court quotes at length that portion of the opinion in the Rankin case concluding that "property" and "valuable thing" are used synonymously and that "any valuable thing or 'any representative of any thing that is esteemed of value' is 'property' within the meaning of the Arkansas Statutes." The opinion also quotes at length the discussion in the Rankin case of the value of amusement places which "are among the most remunerative kinds of property." [See complete quotation from the Rankin case at page 5, supra.] For this and other reasons, the machines were held to be gaming devices.

The Texas Court of Criminal Appeals in Broaddus v. State, supra, also held free game marble machines to be in violation of Article 619, V.P.C. The court quotes verbatim the opinion in the Langford case, including the extended quotation therein from the Rankin case indicating the property characteristics of amusement.

In holding that "pinball" machines awarding free games were used to bet "money or anything of value," as prohibited by Article 619, the court in Hightower v. State, supra, evidently with-

out the benefit of the Broaddus case, also cited the Rankin and Langford cases, as well as others previously noted in that line of authorities. The citations to the Rankin case and Kraus v. City of Cleveland, supra, are of particular significance in that they hold free games to be "property."

The Court of Criminal Appeals followed the Broaddus case on its next consideration of the marble machines in Martin v. State, supra, where it also held that the trial court need not define a gambling device in its charge where the undisputed evidence showed that free plays are awarded by the machine.

To the same effect is Williams Mfg. Co. v. Prock, 86 F. Supp. 447 (N.D. Tex. 1949), citing the Hightower and Broaddus cases. The Prock case was affirmed at 184 F.2d 307 (C.C.A. 5th 1950), the latter court observing that to defeat a note given in payment for such free game pay-off devices it need only be shown:

"... that by the law of that State [Texas] they were, when exhibited, gambling devices, and their 'existence' contrary to the public policy, as well as the specific law of that State."

Lastly, in this regard, we call attention to the attitude of the Texas Courts on lottery and similar schemes where, by a process of disassembling the stages of a gift enterprise, attempts have been made to classify the prizes given as "free" awards, and to remove the element of consideration from such schemes by so-called "free" tickets and registrations for the drawing. As best illustrated by the cases cited in Hoffman v. State, 219 S.W.2d 539 (Tex. Civ. App. 1949), the courts of this State do not hesitate to hold that any indirect consideration, such as added patronage to a place of business, moving from any of the participants to the giver of the prize, will support the charge of conducting a lottery. The analogy here is in the substance which the courts accord to otherwise intangible and elusive values in giving effect to the anti-gambling statutes. As said in a quotation in the Hoffman case of such a scheme, "there is an indirect consideration paid and received." The Hoffman case is also in point on free games being "things of value," and cites the Langford and Hightower cases.

The Texas cases deal primarily with Article 619, V.P.C., which says that any of the described devices shall be considered as used for gaming "if money or anything of value is bet thereon."

In arriving at the determination that free games are "of value," the Texas Courts have accepted and followed the reasoning of the Rankin case that they are "property" and that in gaming statutes the word "property" is synonymous with "thing of value." We cannot escape the Texas Court's observation in State v. Langford, supra, that the Arkansas and Texas Statutes are "similar in practically all respects" and the fact that the Texas Court quoted with approval these words from the Rankin case:

> "Is the right to play a game obtained in the above manner 'property' or a 'thing of value' within the meaning of our statute prohibiting the setting up of gambling devices and gambling? We think it is."

These same words were recopied by the Texas Court of Criminal Appeals in Broaddus v. State, supra, and their use in that case led a former Texas Attorney General, in Opinion No. O-6431, May 22, 1945, to conclude:

> "It would follow from this then that the right to play the machine is 'Property' or 'a thing of value,' therefore, one who deposits a coin and receives only one play gets value received in the form of amusement, in like manner, as one who pays a fee to play a game of miniature golf or other game of amusement. . . ."

It is proper to assume that the Legislature knew of these decisions by the Texas Courts and that the Legislature used the word "property" in the sense of its previous judicial interpretation in this State. Smith v. Texas Co., 53 S.W.2d 774 (Tex. Comm. App. 1934); Blanscet v. Palo Duro Furniture Co., 68 S.W.2d 527 (Tex. Civ. App. 1934).

Either "property" or "other valuable thing" would include free games under these decisions, and it would be improper and unreasonable to assume that the Legislature, in selecting the word "property" in Section 1(b), intended to adopt the restricted sense applied by a minority of the States rather than the broad sense applied by the Courts of Texas, the Attorney General of Texas, and the great weight of authority in the United States.

The word "deliver" may suggest the idea that "property" awarded by prohibited devices is intended to mean physical property.

Neither term is so restricted in the statute and both are very generally used in the broader sense. Webster's New International Dictionary, 2d Ed., gives as the first definition of the word "deliver:" "To set free from restraint; to set at liberty; to release; to liberate, as from control; to free." Other definitions given are: "To give or transfer; to yield possession or control of; to part with; . . . to surrender; . . . to communicate; impart." The synonym given is "release." Free games are delivered to the winner on marble and pinball machines by the automatic release of the mechanism for replay.

If the Legislature had desired to limit the term "property" to physical property, it could have written the word "physical" into the definition. This it did not do, and we are not constrained to do so by interpretation. Such a construction would in effect hold that the Legislature intended to exempt free game pay-off machines from the new law although their only possible use is a penitentiary offense under Article 619, V.P.C., and their mere existence is declared "against public policy and a public nuisance" in Article 634, V.P.C. This would be an unreasonable construction and one which conflicts with the public policy of this State with reference to these precise machines. Statutes should be construed so as to harmonize with the public policy of the State as expressed in other statutes relating to the same type of gaming devices. McBride v. Clayton, 140 Tex. 71, 166 S.W.2d 125 (1942); Dolan v. Walker, 121 Tex. 361, 49 S.W.2d 695 (1932); Freels v. Walker, 26 S.W.2d 627 (Tex. Comm. App. 1930). In the McBride case the court quoted the following language from 59 C.J., p. 1038, § 616:

"All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts."

Therefore, we conclude that the Legislature used the word "property" in the broad sense which includes free games, and that no other words were necessary either in Section 1(a) or 1(b) to bring free games within the definition of a slot machine.

We have been submitted very able briefs by interested attorneys who contend that a contrary interpretation is proper because they say "other valuable thing" is the term which covers free games and that it was used in Section 1(a) and purposely omitted from 1(b). This entire argument is based upon the erroneous assumption that "valuable thing" is synonymous with "free games" and used in Section 1(a) for the sole purpose of covering free games. As heretofore shown, the term "property" in 1(a) and 1(b) is broad enough to cover free games. The addition of the term "other valuable thing" in Section 1(a) must have been for the purpose of covering something other than free games. The devices covered by 1(a),and commonly known as the one-arm or console slot machines, do not ordinarily pay off in free games. The term "other valuable thing" might have been placed in Section 1(a) to make certain that it covered slot machines which delivered any conceivable prize other than money, tokens, free games and merchandise, or in an attempt to prevent their existence and possession for amusement play even when no prize of any nature is awarded. Whatever the reason, we cannot say that it was solely for the purpose of preventing payment of free games and that its inclusion in 1(a) and omission in 1(b) was intentional on the part of the Legislature for the purpose of condemning free game prizes on machines described in 1(a) and exempting them from condemnation as prizes on machines described in 1(b).

The briefs submitted by counsel who urge the contrary view insist that the definitions in the Texas Act are borrowed from the Federal Anti-Slot Machine Act [P.L. 906, 81st Congress of the United States,1950] except for the addition of "other thing of value" in Section 1(a); that the Federal Act omitted the words "other thing of value" and used only "money or property" so as to exclude free game machines from the Federal law; that the history of the Federal Act, as shown by the House Committee hearings and report, shows that "money or property" was not intended to cover free game payoff machines; that in borrowing the definitions of the Federal Act the Texas Legislature must be presumed to have intended the term to mean the same as Congress intended in the Federal Act; and that by adding "other valuable thing" in Section 1(a) and omitting it in 1(b) the Texas Legislature intentionally excluded free game pay-off machines from H.B. 326.

There are many reasons why we cannot give controlling effect to this aid in interpreting legislative intent. In the first place, we do not believe that the wording of the Texas Statute is ambiguous so

as to require the application of this aid in its construction. Even so, the rule that a legislative act borrowed or adopted from the laws of another jurisdiction will ordinarily be given the same construction in Texas that it had previously received in the jurisdiction from which it was borrowed, applies only when there has been previous judicial interpretation of the law in the other jurisdiction. We know of no such interpretation of the terms "money or property" in Public Law 906. Even when conditions of the rule have been met, the rule is a mere aid in legislative interpretation and is by no means binding or conclusive. Snoddy v. Cage, 5 Tex. 106 (1849); Paragon Oil Syndicate v. Rhoades Drilling Co., 277 S.W. 1036 (Tex. Comm. App. 1925). When there are conflicting court decisions in other jurisdictions, Texas Courts are free to adopt a reasonable construction of the meaning of the terms in question. Howth v. J. I. Case Threshing Machine Co., 280 S.W. 238 (Tex. Civ. App. 1926, error ref.).

Secondly, in no instance have we found the rule applied when the courts of the borrowing state have previously given a contrary interpretation and meaning to the words used in the borrowed phrase or sentence. A State Legislature is presumed to know of the decisions of its own courts and to intend the meaning previously attributed by them to the same words in similar legislation. Smith v. Texas Co., supra; Blanscet v. Palo Duro, supra. Further, the rule of applying a foreign meaning to borrowed phrases never applies when such construction is contrary to the spirit and policy of the jurisprudence of Texas. Paragon Oil Syndicate v. Rhoades, supra; Edwards Mfg. Co. v. Southern Surety Co., 283 S.W. 624 (Tex. Civ. App. 1926). It is certain that the construction placed on the terms of the Federal Act (restricted use of the word "property" so as to exclude free game pay-off marble and pinball machines) is contrary to the spirit and policy of Texas law on the subject of gaming. See Articles 619 and 634, V.P.C.; State v. Langford, supra; Broaddus v. State, supra; Hightower v. State, supra; Martin v. State, supra; and Prock v. Williams Mfg. Co., 184 F.2d 307 (C.C.A. 5th 1950).

Finally, there are other aids to statutory construction of equal standing and of far more importance in this instance in determining the intention of the Legislature. These include the public policy of the State with reference to the subject matter, which has already been discussed, the old law, the evils sought to be cured, and the legislative history of the particular Act under consideration. The old law, which was not repealed, classifies free game pay-off

machines with all other gaming devices as unlawful and against public policy in Texas. The evil sought to be cured by H. B. 326 is the mere possession or existence of "illegal gaming devices . . . kept and operated in this State and taking money from school children and others in large sums . . . and the fact that present laws are not adequate to suppress their profitable operation . . . ." Sec. 9, H.B. 326 (Emergency Clause).

It is a matter of common knowledge from the public press and public statements of those sponsoring H.B. 326, and the companion Senate Bill (S.B. 323), that free game marble and pinball machines were one of the evils intended to be more effectively suppressed by the Act. While H.B. 326 was pending before its passage by either House, one of its authors, Representative James B. Adams, made a public speech explaining the purpose and scope of the proposed law to a conference of the State's prosecuting attorneys called by the Attorney General of Texas in Austin on March 30-31.[2] In the course of his explanation of the evils proposed to be remedied by H. B. 326, Mr. Adams said:

"Then under section (b) we go down and take in any machine or mechanical device manufactured or adapted to operate by means of the insertion of a coin, token, or other object, and designed, manufactured, or adapted so that when operated it may deliver, as the result of an application of an element of chance, any money or property. Well, as you know, our Court of Criminal Appeals has held that free plays on a five-ball pinball machine does constitute something of value and, therefore, under our present law every five-ball pinball machine placed in operation in your drugstores, your bus stations, and places like that, they do constitute a violation of our present gaming laws.

"Many people said, 'Well, they are just an amusement device.' But we felt otherwise on that; and, as a result of studying the crime reports of the different crime commissions, we have had it pointed out to us time and time again where pinball machines, so-called harmless amusement devices only, are utilized for opening up closed territory to

---

2/ Proceedings of the Attorney General's Conference of District and County Attorneys on Organized Crime, 1951, pp. 58-63.

gambling. They start off with those, and then through
a steady process they get the people acclimated to gam-
ing. Then they can bring in their regular one-armed
bandits and consoles.

"Now under this law, under Section (2) if they take
the counting devices off of the machines -- every slot
machine manufacturer since 1946, as most of you know,
has had two little devices under the machine. One of
them, every time you win a free play, registers. You
have a button on the left which is your re-play button.
Every time you push that button it registers on one of
the counters over here. Then when a man pays you off,
it has a separate counter over here. If you just re-play
it, the re-plays show on this one. But if it pays you off,
he reaches under the back at another button, presses it,
and it registers on an automatic counter. Therefore,when
the local coin machine operator comes around to his es-
tablishment, they raise up the machine and look at the
counter and see how many games have been won on the
machine. Then, if he is in the habit of paying off his cus-
tomers when they win, they look at this other counter and
they can determine just how much this man paid out in
cash.

"Well, if they take all those off and fix the five-ball
pinball machines where they do not show a re-play, --
where after you get so many thousands in score on the
machine it shows a re-play up on the board, -- well, if
they take those devices off, then they would not come under
the terms of this act. However, if they do go that far, then
you can rest assured that it is an amusement device be-
cause a man has to put a nickel in it every time he plays
it. And also, even if the man does say, 'Well, if you get so
many thousand I will pay off over the counter,' you can elimi-
nate about 90 per cent of the gambling, unless the man owns
the machine. No operator is going to trust the local drugstore
owner or local beer joint operator to tell him how much he
paid out because, as we have been previously shown, there
is no honor among thieves; and if they don't have that auto-
matic element of being able to tell exactly how much was
paid off, well then we will eliminate the gaming aspects from
these amusement-only machines."

Both the evils to be remedied by and the history of H.B.
326 vary greatly from those of the Federal law. The Federal author-

ities and most of the Federal courts have not considered free game machines an evil to be eliminated. They do not consider free games to be either "property" or "a thing of value." The history of Public Law 906 shows that machines awarding free games or amusement only were to be excluded from the use of the words "money or property." In Texas it was quite different. Free games have long been considered "property" or "a thing of value" and free game machines have been condemned as gaming devices and against public policy. The history of H.B. 326 in the Texas Legislature shows that free game machines were intended to be included rather than excluded from the Act. The best recorded evidence of this fact is the defeat of an amendment on the floor of the House which had as its purpose the exemption of certain free game machines from Section 1(b) of the Act.

Representative Deno Tufares offered the amendment to Section 1(b) as follows:

"Amend H.B. 326, line 34, after 'property'; and before 'or' by inserting the following: 'except pinball machine of 5 balls which allow free games up to 10, and free games only.' "[3]

This amendment was tabled by a vote of 104 to 28. It is strong evidence that the Legislature considered the word "property" as including free games and that there was no desire to exempt any type of free game machines. It has been argued that it is just as reasonable to conclude that free game machines were already excluded and the amendment was therefore unnecessary. To be sure that our interpretation is not in conflict with what actually transpired on the floor of the House in connection with this amendment, we have obtained statements from the author of the amendment, Representative Tufares, and from Representative Adams, who, as author of H.B. 326, moved to table the Tufares amendment. Evidence as to what was said in legislative debates by sponsors of a bill is sometimes admissible to aid in construction of an ambiguous statute. Ex parte Peede, 170 S.W. 749 (Tex. Crim. App. 1914). Since this aid is being used here only for the purpose of countering arguments based upon similar evidence [statements made in Congressional Committees] as to the intent of Congress in Public Law 906, we feel free to consider and quote the written statement

---

3/ House Journal, 52nd Legislature, page 1369.

of Mr. Tufares, affirmed by Mr. Adams, as follows:

"Representative Jimmie Adams, the author of the bill, in explaining the purpose and object of the act and what was covered thereby, said on the floor of the House that it would make unlawful all slot machines, marble tables and pinball tables which paid off in money, free games, or any other type of property. He said the definition of Section 1(b) covered 'free game' machines because the Texas courts had held any token or free game to be property under the Texas gambling laws. He said that 'five ball' marble machines which paid off in free games would be prohibited under this bill. Considering a five ball marble table to be a game of skill rather than a game of chance, I offered the amendment reported in the Journal excluding those that offered up to 10 free games. I told the House in debate that my amendment was necessary to exclude five ball 'free game' marble tables (up to 10 free games) from the act under consideration. No one made any argument that free game machines were already excluded under the bill, and no one disputed the author's statement that they would come under the act as worded. The author did say that if the free game device was eliminated from the five ball machines, they could still be possessed and operated. Rep. Adams opposed my amendment with the argument on the floor that permission of 10 free games on marble tables might lead to conversion of slot machines to that method of operation, and my amendment was defeated."

Consideration of the suggested aids in construction of ambiguous statutes merely confirms our interpretation of the plain words of the statute itself.

You are therefore advised that coin-operated pinball or marble machines which are designed, manufactured or adapted so that when operated they may deliver to the winner, as a result of the application of an element of chance, money, free games, or other property are included within the provisions and penalties set out in H.B. 326.

## SUMMARY

The keeping or exhibition of coin-operated pinball

or marble machines which pay off the winners automatically in money or free games have been held by the Texas Court of Criminal Appeals to be in violation of Article 619, V.P.C., and therefore a felony offense. Under Article 634, V.P.C., they are declared to be against the public policy and a public nuisance. Williams Mfg. Co. v. Prock, 184 F.2d 307 (U.S. Ct. App., 5th Cir. 1950).

The manufacture, ownership, transportation, possession, etc., of coin-operated pinball or marble machines which are designed, manufactured or adapted so as to deliver to the winner, as a result of the application of an element of chance, money, free games, or any other property, are prohibited by H.B. 326, 52nd Legislature, 1951 (Art. 642a, V.P.C.).

The term "property" is used in Section 1(b) of H.B. 326 (Art. 642a, V.P.C.) in its broad sense so as to include free games, this construction being in accord with Texas court decisions and the weight of authority in other jurisdictions.

Yours very truly,

PRICE DANIEL
Attorney General

Ned McDaniel

J. Fred Jones
Assistants

NMcD/JFJ/mf


Considered and approved in conference this 5th day of September, 1951.

Price Daniel
Attorney General